EDWARD WINSLOW & wife *vs.* CHARLES A. NAYSON & another.

A complaint for a contempt in disobeying an interlocutory order in equity is an incident to the principal action, and should be filed in it and not entered as a separate suit.

One who has actual notice of an order for the immediate issue of an injunction and disobeys the terms of it as ordered, is guilty of a contempt, though the injunction has not been served upon him, or issued, or the order formally drawn up; but where it is ordered that an injunction shall issue upon the filing of the bill, such order is conditional, and there is no injunction and can be no contempt till the bill is filed.

The maintenance for forty years of a fence on a highway justifies, under Gen. Sts. c. 46, § 1, its continuance; and public officers who wrongfully undertake to remove it and use the inclosed land as a part of the highway, may be restrained by injunction.

Upon a bill in equity for an injunction to prevent a threatened trespass, the court may, under a prayer for general relief, and in order to avoid a multiplicity of suits, award damages for the injury done by such trespass before the injunction was issued.

BILL IN EQUITY for an injunction, alleging that the plaintiffs, in right of the wife, were seised in fee of a parcel of land in the bill described, with buildings thereon, situated in Amesbury; that they and their grantors had been in quiet possession for more than forty-five years, and had erected buildings and inclosed the land by fences which had been in the same position, fronting upon the highway bounding the premises, for more than forty

years; that the defendants, who were the road commissioners of Amesbury, asserted that the county commissioners of the county of Essex in 1827 had widened the highway, and had laid out a portion of the land within the line of the fence as a part of the highway. The bill alleged that if any portion of the land was so laid out, the true boundaries of the highway could not be made certain by records or monuments; that the land had never been entered upon, taken possession of or worked by the officers of the town, and that it had been inclosed by fences for more than forty years; that the defendants had notified the plaintiffs' tenant, occupying the premises, to remove his shed and fences within forty-eight hours; and that they intended to enter at once upon the land and remove a portion of the buildings and fences, and to cut down the trees there growing. The bill prayed for an injunction, and for such other decrees and orders as justice might require.

The bill was presented to *Ames,* J., at chambers, who made an order, indorsed upon the bill, as follows: "Supreme Judicial Court. In Chambers, Brookline, June 12th, 1872. On the filing of this bill an injunction is to issue, restraining the defendants from entering upon the plaintiffs' land, or removing any trees, buildings or fences belonging to plaintiffs, to continue in force until further order by some justice of this court. Seth Ames, J. S. J. C."

The answer denied that the plaintiffs had been in quiet possession of the premises for more than forty years, or that the fence had been maintained for that length of time, but alleged that the highway was widened and straightened in May, 1827; that then there was no fence upon the premises; that the fence had not stood for forty years, and had not been claimed by the owners of the land as the line of the road; that the owners of other lands bounding upon the highway had built fences upon the line of the highway as it was located in 1827; that the officers of the town had taken possession of the land within the location, and had constructed the street upon it with a sidewalk on the line of the location; that for a few years the plaintiffs had maintained a fence projecting from three to five feet within that line, so that

in passing in front of the plaintiffs' land it was necessary to turn a sharp angle to go around the projection of the fence ; that the defendants had been petitioned by a large number of the inhabitants of the town to remove the fence ; that they were in duty bound to remove it; and that, after notifying the occupant of the premises, they had removed the fence and a portion of a shed, doing no unnecessary damage.

After the filing of the bill, the plaintiffs filed against the defendant Nayson a complaint for a contempt in disobeying the injunction. The complaint, after setting forth the substance of the bill and the order indorsed thereon, proceeded as follows :

" In the forenoon of the 13th day of June, 1872, the said bill was filed in the clerk's office for the county of Essex, and at the same time an injunction was issued against the defendant and others, as directed by said order. On the said 12th day of June the said Nayson, well understanding that the plaintiffs were preparing to obtain the said injunction, in order to anticipate and prevent its effectual operation upon him by executing the work threatened as above, before the injunction could be obtained, proceeded by himself and his servants to tear away a part of the plaintiffs' said barn, and to dig up their soil ; that on the said 12th day of June, immediately after the said order was made by Mr. Justice Ames, W. C. Binney, Esq., solicitor for the plaintiffs, sent to Amesbury for Dr. Sparhawk, the occupant of the said premises, in whose charge they were, the following telegram : ' Tell Sparhawk an injunction has been granted by Judge Ames, tell him to notify Nayson ; will bring injunction down with me to-morrow noon. W. C. Binney.'

" Early in the morning of said thirteenth of June, the defendant again entered upon the premises with a large number of men to proceed with his said threatened operations, and thereupon said Dr. Sparhawk, in the presence of witnesses, read to him the above telegram, and also told him that the plaintiffs had applied for the injunction and that it had been granted, and warned him not to go on with the work, as he would be held responsible. The defendant refused to give any heed to the telegram, the information or the warning, but immediately proceeded to increase

the number of teams and workmen, and with them entered and continued upon the premises and pressed forward the work of injury and destruction he had begun, with' still greater vigor and speed. He dug up and carried away the plaintiffs' soil, tore down fences and dug up posts, cut down and tore up useful trees and bushes and ornamental shrubbery, and exposed and cut the roots of large elm trees, and continued to work in this manner, apparently wilfully doing all the damage he could, until about two o'clock in the afternoon of said June the thirteenth, when said Binney, having proceeded with all possible dispatch, arrived at the premises with the injunction, and immediately told the defendant that he had an injunction from the Supreme Court to restrain him from entering or working upon the premises, or removing buildings, trees or fences, and offered to read it to the defendant; placed the injunction in the hands of the defendant, and told him to read it if he wanted to ; told him to stop his work and take off his men ; and endeavored to persuade him to leave the premises and do no further damage ; but the defendant refused to desist from his operations or to take any notice of the injunction of which he was thus fully and distinctly notified ; and thereupon the defendant continued by himself, and from fifteen to twenty laborers or servants in his employ, to dig up and carry away the plaintiffs' soil, tear down fences, dig up posts, cut away and pull up useful bushes and ornamental shrubbery, and injure the roots of trees on the plaintiffs' said estate, until about three o'clock in the afternoon of said thirteenth day of June, when the said injunction having been served upon the defendant by an officer, and the said Binney having again notified and warned him, he reluctantly ceased his operations and left the plaintiffs' premises.

" And thereupon the plaintiffs say that in the proceedings and acts aforesaid the defendant has acted in contempt of the authority of this court, and in total disregard of its injunction, and has wantonly and wilfully disobeyed the same in every particular as aforesaid.

" The plaintiffs further say that the said waste, wrong and injury were committed and done against the consent of the plain-

tiffs and contrary to repeated requests and warnings above stated; that the value of the premises has been greatly lessened thereby, viz. : in the sum of one thousand dollars ; and that irreparable damage has been done to the plaintiffs.

" Whereupon the plaintiffs pray that the court will, in consideration of the breach of said injunction, issue a writ of attachment against said defendant, and order that said defendant stand committed until he pay to the plaintiffs the amount of damages they have sustained in consequence of the acts and doings above specified and alleged, together with all the costs and expenses of the plaintiffs in procuring this application and the writ of attachment, together with such fine or other punishment as to your honors shall seem meet ; and the plaintiffs further pray for such other relief in the premises as may be suited to the nature of their case."

To this the defendant answered "that on the 12th day of said June he commenced to remove the fence and an old shed belonging to the petitioners and within the line of said highway, and to change the grade to conform to the grade of said highway ; that on the morning of the 13th of June, Dr. Sparhawk informed him that a telegram from W. C. Binney had been received, stating that he had made application for an injunction, and that he should obtain one, and should bring it to Amesbury ; that the defendant replied that he should obey such injunction, if obtained, that, previous to that, he had had no notice that it was the intention of the petitioners to obtain an injunction, and he denies that he did the work aforesaid to anticipate or prevent the operation of an injunction, as alleged in said petition. And he further says that he did not suppose that the notice that he received from Dr. Sparhawk as aforesaid was a sufficient notice to him or as binding upon him, and restraining him in the execution of his said work ; that in fact at that time the said petition was not filed in court, and the injunction by the order of the court was not to issue until the filing of said petition ; that he continued to work until the afternoon of that day, and during that time he did remove some soil from the land claimed by the petitioners, and he took down a portion of the fence and removed a lilac bush ; that

at or about three o'clock in the afternoon said Binney informed him that he had obtained an injunction against him, restraining him from entering upon the Winslow estate, and committing any waste thereon, but did not read any paper to him, though he held one in his hand, or give him any further information as to the contents thereof; that the defendant, supposing that service of legal process should be made by an officer, asked Mr. Binney, knowing him to be a lawyer, if that was a legal service of an injunction, — if so, he would recognize it and obey the order; that Mr. Binney made no reply to the inquiry as to the sufficiency of the service, and went away; that the defendant immediately went to the office of Mr. Turner to obtain advice whether he was bound to take notice of an order of court so communicated to him; that upon leaving Mr. Turner's office he met Mr. Binney, accompanied by a constable, who served a copy of said injunction upon him, and he immediately ceased operations and discontinued his work; and the defendant denies that he acted in the premises, or intended to act, in contempt of the authority of this court, and in disregard of its injunction, or that he has wantonly and wilfully disobeyed the same as alleged. And he further denies that he committed any waste, wrong or injury against the consent of the plaintiffs, or contrary to their repeated requests and warnings. And he denies that the work that was done on the thirteenth day of June lessened the value of said premises, or that the petitioners suffered irreparable damage thereby. And he denies that the work which he did there was done with intent of wilfully damaging the petitioners' premises, or that he increased the number of teams and workmen for the purpose of pressing forward any work of injury and destruction; but he says that all that he did there he did in execution of his duty as road commissioner, and with no other object in view than faithfully to perform the same."

The bill in equity was heard upon the bill, answers, replication and proofs, by *Ames*, J., who made the following report of the facts:

" The plaintiff Elizabeth S. Winslow is, and for a long time has been, the owner of the estate described in the bill. The

highway in front of it was ordered to be widened, by the county commissioners of Essex County, in the year 1827; but although this widening appears to have been made a matter of record, the road never was altered in fact, or worked or levelled for travel in conformity to that record, in front of the plaintiffs' house or in that immediate vicinity, and has continued since said record in the same apparent condition as before. A fence in front of the dwelling-house was erected in that year, or within two years thereafter, and has been maintained ever since, until it was removed by the defendants in the manner described in the bill. I do not find that it is a case in which the bounds of the highway, as established in 1827, could not be made certain; but I do find, upon a preponderance of evidence, that the plaintiffs' fence has been maintained and continued on the same line for more than forty years, and that her buildings were within that line. And I find that the defendants, under claim of right in their capacity of road commissioners of the town of Amesbury, have taken away a large portion of the fence, and have cut off and removed a portion of the stable or carriage-house standing on the land, and have dug away the bank and soil in front of the house, for about the depth of two feet, and have thereby made access to the premises by the usual carriage way inconvenient and unsafe.

"And the case in equity is reserved upon the bill and answers, and the foregoing report, for the consideration of the full court."

The complaint for contempt was heard by the same judge, on the complaint, answer and proofs; and he reported the following facts:

"An application for an injunction to restrain the threatened proceedings of the defendants was made to me, in the afternoon of June 12, 1872, and upon such application an order was passed, in these words, viz.: 'Supreme Judicial Court. In Chambers, Brookline, June 12, 1872. On the filing of this bill, an injunction is to issue, restraining the defendants from entering upon the plaintiffs' land, or removing any trees, buildings or fences belonging to plaintiffs, to continue in force until further order by some justice of this court.'

"The bill of complaint, with this order indorsed thereon, was then delivered by me to the plaintiffs' solicitor, who in the forenoon of the next day presented it to and filed it with the clerk of the court. A writ of injunction was accordingly made out, and delivered by the clerk to the plaintiffs' solicitor, who then went with it to Amesbury, and caused it to be served on the defendant Nayson, by a certified copy delivered to him by a constable of that town, at about three o'clock in the afternoon of June 13; and the defendants then immediately desisted from their work.

"It appeared that the defendants, acting in the capacity of road commissioners, had been at work, for some time before the filing of the bill, in setting back fences, and widening the road in order to make it in conformity with the line laid out by the county commissioners in 1827; and notice was given to the plaintiffs May 13, 1872, to the effect that their fences and buildings encroached upon the road. The right of the plaintiffs to maintain the fence and building where they stood was a matter of some discussion, and several attempts at negotiation on the subject of ascertaining the true line by a new survey had been made, but nothing definite was agreed upon. On the 10th day of June the plaintiffs were notified that the fence, &c., must be set back to the commissioners' line within forty-eight hours. The bill was drawn up the next day, and was signed and sworn to at Boston on the 12th. On this last mentioned day, in the afternoon, the plaintiffs' solicitor sent the telegraphic message, as set forth in the complaint, from Boston, to his wife. The contents of this telegram were made known to the defendants, at seven o'clock in the morning of the 13th, by the plaintiffs' tenant, who read the telegram to the defendant Nayson. To this Nayson replied that 'anybody could send a telegram,' and that he should take no notice of it; but would obey the order of the court whenever it should be properly made known to him. It was understood by all parties that the plaintiffs claimed the right to maintain the fence as it stood, and that they denied that they were bound to set it back. I find also that after hearing the telegram, the defendants increased the number of men employed in widening the road opposite the plaintiffs' estate, and that the workmen were

kept at work without taking any intermission at the usual hour of dinner. At about twenty-five minutes before three o'clock in the afternoon of that day, the solicitor of the plaintiffs (Mr. Binney) arrived at the scene of action with the writ of injunction, which he showed and fully explained to Nayson, who inquired of him, ' Are you authorized to serve a writ of injunction, and am I obliged to take it from you?' adding the words, ' If you say, as a lawyer, that I am obliged to take it from you, I shall obey it.' To this Binney replied, ' I will find somebody that can serve it.' A copy of it was accordingly served upon the defendant by a constable at about five minutes before three o'clock. It did not appear how much or whether any large amount of work was done by the defendants during the last twenty minutes before the service of the writ by copy.

" And the complaint for the alleged contempt, on the part of said Nayson, is reserved for the consideration of the full court, upon the complaint and answer, and upon the above report of facts."

*J. C. Perkins*, for the plaintiffs. Upon the question of contempt he argued, that the defendant was bound to obey the order for an injunction as soon as he had knowledge of it. It was not necessary that the injunction should have been served on him, or even issued. Having knowledge that the order had been made, he had no right to proceed as if there had been no such order, under any pretence as to the manner of service. He was bound to respect the order and to desist from his operations at once. Any action taken by him afterwards, was taken at his peril. *Skip* v. *Harwood*, 3 Atk. 564. *Anonymous*, 3 Atk. 567. *Kimpton* v. *Eve*, 2 Ves. & B. 349. *Vansandau* v. *Rose*, 2 Jac. & Walk. 264. *McNeil* v. *Garratt*, Craig & Phil. 98. *Howe* v. *Willard*, 40 Vt. 554. *Hull* v. *Thomas*, 3 Edw. Ch. 236. *Lewes* v. *Morgan*, 5 Price, 518. *People* v. *Sturtevant*, 5 Seld. 263. *Powel* v. *Follet*, Dick. 116. *Hearn* v. *Tennant*, 14 Ves. 136. *James* v. *Downes*, 18 Ves. 522. *Rattray* v. *Bishop*, 3 Madd. 220. *Spokes* v. *Banbury Board of Health*, L. R. 1 Eq. 42. *Buffum's case*, 13 N. H. 14. *Hawley* v. *Bennett*, 4 Paige, 163. 2 Dan. Ch. Pr. (4th Am. ed.) 1683–1685. 2 Joyce on Injunctions, 1325.

*J. W. Perry & L. S. Tuckerman,* for the defendants, were stopped by the court upon the question of contempt.

GRAY, C. J. The complaint against the defendant Nayson has been irregularly treated as a distinct cause, and entered upon the docket as such. It is really but an incident to the principal suit, and all the papers relating to it should be filed with the other papers in the case. These observations are made to prevent similar irregularities in the future. In the present case, they are comparatively immaterial, because the plaintiffs have failed to make out the contempt charged.

The authorities cited by the learned counsel for the plaintiffs show that when the court has pronounced an order for the immediate issue of an injunction, a person who has actual notice that the order has been made, and disobeys it, may be held guilty of a contempt, even before the injunction has been issued, or the order has been formally drawn up or served upon him. But such is not this case.

The second rule in chancery provides that no injunction or other proceeding shall be ordered until the bill is filed, unless for good cause shown. 104 Mass. 568. The purpose of this rule is obvious. It is that, except in cases of urgent necessity requiring instant action, the extraordinary powers over persons and property, with which a court of chancery is vested, shall not be exercised before the plaintiff's statement of his grievances has been filed in the clerk's office ; and that the evidence of the exercise of these powers shall appear upon the records of the court, open to the inspection of defendants and of all persons concerned, and not be put in the control of plaintiffs or their solicitors, to be disclosed, withheld or misrepresented, as their interests or caprices may dictate.

The justice to whom this bill was presented, apparently intending to act, as nearly as the circumstances would allow, in the spirit of that rule, ordered that, upon the filing of the bill, an injunction should issue. The order for an injunction was conditional upon the filing of the bill. Until the bill had been filed, no injunction was granted. The plaintiffs' solicitor, without perfecting the right to an injunction by filing the bill, sent a telegram

to his wife, directing her to tell the plaintiffs' tenant to notify the defendant that "an injunction has been granted," which was not the fact, either when the telegram was sent, or when it was read to the defendant early the next morning, for the bill had not yet been filed. We would not be understood to intimate that, if it had been, a defendant would have been bound to give any credence or weight to a notice transmitted in such a circuitous and irregular manner. There can certainly be no disobedience of an order which has not taken effect. The reply of this defendant Nayson to the plaintiffs' tenant shows that, while he did intend, as he lawfully might, to assert with promptness and vigor against the plaintiffs the authority which the defendants claimed to be vested in them in behalf of the public, he was ready to obey any order of the court as soon as he had due notice of its existence. No such notice was given until the afternoon of the same day, when the writ of injunction was shown to him by the plaintiffs' solicitor, by whose opinion as to the validity of the notice he at once offered to be governed. And the report does not show that after this notice any work was done by the defendants. The motion for an attachment is therefore denied.

But under the bill, the plaintiffs, upon the facts found at the hearing, are entitled to the relief which they seek. Having maintained their fence in the same place for forty years, they had the right to keep it there as against the public. Gen. Sts. *c.* 46, § 1. *Cutter* v. *Cambridge*, 6 Allen, 20. The defendants, acting as public officers, under an unfounded claim of authority to appropriate the plaintiffs' land to the use of the public for a highway, having unlawfully removed a part of the fence, and dug away the soil to such a depth as to make the access to the land from the highway inconvenient and unsafe, should be restrained from doing further mischief, and the injunction must be made perpetual. *Boston Water Power Co.* v. *Boston & Worcester Railroad Co.* 16 Pick. 512, 525. Kerr on Injunctions, 295, 296. And the court, having obtained jurisdiction in equity of the case for this purpose, may properly, in order to prevent multiplicity of suits and to do complete justice between the parties, under the prayer for general relief, also award damages for the injury already done

by the defendants to the plaintiffs' premises, instead of obliging them to bring a separate action at law therefor. *Jesus College* v. *Bloom*, 3 Atk. 262 ; *S. C.* Ambl. 54. *Cathcart* v. *Robinson*, 5 Pet. 263, 278. *Franklin* v. *Greene*, 2 Allen, 519. *Creely* v. *Bay State Brick Co.* 103 Mass. 514. *Milkman* v. *Ordway*, 106 Mass. 232. *Brown* v. *Gardner*, Harringt. Ch. 291.

Neither party having moved to have an issue framed for the submission to a jury of the question of the amount of such damages, they may be assessed by a master, unless the parties agree upon the amount. Upon such agreement, or the return and acceptance of the master's report, the plaintiffs will be entitled to a final decree, with costs, except so far as the costs have accrued upon the motion for an attachment for contempt.

*Decree accordingly.*