Cauble *v.* Hultz *et al.*

Filed March 13, 1889.

---

No. 13,633.

## CAUBLE *v.* HULTZ ET AL.

HIGHWAY.—*Drainage.—Right to Enter upon Private Lands.*—Under section 16 of the act of 1883 relating to highways (Acts of 1883, p. 66), a ditch may be located on private lands only when suitable drainage can not be had in the roadway at the same expense.

SAME.—*Selection of Location. — Duty of Supervisor.*—If suitable drainage can not be had in the roadway, the land-owner may select the location of the ditch, and if the selection is accessible and suitable it is the duty of the supervisor to adopt it; but if the land-owner fails to point out the location, or if his selection is not accessible or suitable, the supervisor may make the location.

SAME.—*Irreparable Injury.—Injunction.*—If any question is made as to whether proper drainage can be had in the highway, or as to whether a location selected by the land-owner is a suitable one, the land-owner

has a right to have it determined in a judicial proceeding, and he may maintain injunction to prevent irreparable injury.

SAME.— *When Supervisor a Wrong-Doer.*—The supervisor is a wrong-doer if he undertakes to construct a ditch on private lands when proper drainage can be had in the roadway, or, when it is necessary to go upon private grounds, if he refuses to accept a suitable location selected by the land-owner and locates the ditch elsewhere, and injunction will lie to prevent an injury from being inflicted upon the land-owner which can not be fully compensated in damages.

From the Washington Circuit Court.

*S. H. Mitchell* and *R. B. Mitchell,* for appellant.

*S. B. Voyles* and *H. Morris,* for appellees.

BERKSHIRE, J.—This is an action for injunction. There are two errors assigned :

1st. The court erred in sustaining the demurrer to the amended complaint.

2d. The court erred in sustaining the motion to dissolve the temporary restraining order issued and granted in the cause.

The amended complaint states substantially the following facts: That the appellee Hultz is the supervisor of Road District 3, in Jefferson township, in Washington county, Indiana, and the appellee Enochs is the trustee of said township; that the appellant is the owner of certain real estate situated in said township, which is described in the complaint; that on the 22d day of November, 1886, the appellee Hultz served a notice upon the appellant of his intention to enter upon the said real estate on the 29th day of November, 1886, for the purpose of constructing a ditch thereon, the said proposed ditch to commence on the west line of section 20, town. 4 north, of range 3 east, 192 rods north of the southwest corner of said section, and to run thence in a northeasterly direction about 30 rods to a washout or bayou into which it is to empty ; that said bayou extends from White river into said real estate for a distance of about 60 rods; that the appellant has expended large sums of money in building and constructing banks

across said bayou and in filling the same with dirt and other material, to prevent the influx of water from said White river and to cause said bayou to fill up and become tillable; that if said ditch is opened into said bayou it will prevent appellant from filling up the same, and thereby permit the water from White river to flow into and through said bayou, and wash away and destroy a large tract of valuable land belonging to the appellant, and wash away and separate from the main body of land about 20 acres, and render said 20 acres inaccessible and valueless; that if said ditch is constructed and opened into said bayou, the water flowing therein from said ditch and said river when there are freshets will gradually but surely wash away a large tract of appellant's land, and cause him great and irreparable injury; and it is further averred that the said appellees assert that the purpose of said ditch is to drain a certain highway situated on the west line of said section 20, known as the Spark's Ferry Road, but appellant avers that the said highway can be drained and repaired on the roadway at a cost not exceeding the cost and damages of entering upon the land of the appellant; that by constructing the ditch upon the roadway the dirt and material obtained therefrom can be used in grading said highway, and thereby improve and repair said highway more perfectly than the drainage proposed by said appellees; and that the appellant proposed to the appellees that he would select an appraiser, and they to select another, to act with the said appellee Hultz in assessing damages caused by the construction of said ditch, and that he have the privilege of offering evidence as to damages, and that the appraisers determine whether the drainage could be made on the roadway at as little cost as the cost and damages of entering upon his land and constructing said ditch, all of which the appellees refused, but asserted their intention of going upon the said real estate of appellant and constructing said ditch as proposed; and that the appellant then gave, and still gives, the said supervisor the privilege and permission to go upon

his said lands and to construct a ditch to drain said highway; that at the time he gave such permission he pointed out and designated the location of said ditch; that said route, as located by the said plaintiff, is practicable (a description of the route is then given); that the location of said ditch as proposed by the appellant can be constructed at less expense than the cost and damages of the one proposed, and will completely and perfectly drain said highway; that the appellee Hultz is acting under the order of the appellee Enochs, and is threatening to enter and go upon the said lands with a large force of men for the avowed purpose of digging and constructing said ditch, and has given the appellee notice of his said intention.

The demurrer to the complaint admits the truth of the facts as therein alleged. We are of the opinion that the facts alleged show something more than a simple trespass which can be compensated in damages.

The facts alleged show a case where, if the acts threatened are carried into execution, irreparable injury to the appellant will be the necessary result. We are therefore of the opinion that, unless there is some authority authorizing the threatened action of the supervisor, the complaint constitutes a cause of action. *Winslow* v. *Nayson*, 113 Mass. 411; *Frizell* v. *Rogers*, 82 Ill. 109; *McArthur* v. *Kelly*, 5 Ohio, 140; *Ross* v. *Thompson*, 78 Ind. 90; *Heagy* v. *Black*, 90 Ind. 534; *Kyle* v. *Board, etc.*, 94 Ind. 115; *Erwin* v. *Fulk*, 94 Ind. 235; 3 Pomeroy Eq. Jur., section 1357; *Clark* v. *Jeffersonville, etc., R. R. Co.*, 44 Ind. 248; *Town of Sullivan* v. *Phillips*, 110 Ind. 320; *Balfe* v. *Lammers*, 109 Ind. 347.

Section 16 of the act of 1883 is relied upon as giving to the supervisor the authority to do what is charged against him in the complaint. That section reads as follows: "The supervisor, or any other person by his order, may enter upon any land adjoining or near to any highway in his district, and thereupon construct such ditches, drains and dams, and dig and remove any gravel, earth, sand, or stone, or cut and re-

move any wood or trees that may be necessary for the proper construction, repair, or preservation of such highways, and the supervisor, together with two disinterested persons, shall proceed at once to the locality and assess such damages in favor of the owner of the lands thereof, as in their judgment seems right and proper, and report the same under oath, which oath shall be administered by the supervisor to the two appraisers, and by the township trustee to the supervisor, within ten days after such assessment, to the trustee, having first given notice thereof to the party damaged, and such trustee shall pay the damages assessed, to be paid out of the township treasury. No person's land shall be entered when material can be found on the roadway, or convenient in the district on the roadways thereof, nor when drainage can be made on the roadway, at a cost not exceeding the cost and damages of entering upon private lands. In all cases contemplated by this section, demand shall first be made of the owner of the land before entering thereon or taking material. If he assent, he may point out the material and location from which to be taken, and if accessible and fit for the purpose intended, it shall be there taken. If consent be refused by the owner, the supervisor shall notify such owner of his intention to so enter, for what purpose, and for what time, and point out the land to be occupied, or the material to be taken. In all assessments of damages the owner shall be notified, and have leave to select one appraiser, and shall have notice of the time and place of the meeting of the appraisers, and privilege to offer evidence as to damages at the time of the assessment by the appraisers: *Provided,* That any person aggrieved may appeal from the action of the appraisers, by giving notice in writing to the road supervisor, to any justice of the peace in his township. Such notice must be given within ten days after final action by the appraisers, and such person shall give bond within thirty days after final action by the appraisers. Such bond shall be payable to the super-

visor, and such bond shall be filed with and approved by the appraisers, and thereupon the papers shall be delivered to a justice of the township, and such appeal shall be determined as other questions are determined in civil cases before justices." Acts of 1883, p. 66.

The proviso above only allows an appeal from the assessment made by the appraisers. As to the right of the supervisor to go upon the land, and as to his right to go elsewhere than as pointed out by the land-holder, there is no provision for an appeal.

The Legislature has, by the foregoing statute, given the right to a supervisor to enter upon the land of another and at his pleasure locate and construct ditches, drains, etc., or it has given to him this power under certain restrictions and limitations. The section upon its face bears evidence of a want of care in its preparation, and it is somewhat difficult to determine fully what the legislative intention was.

It is first provided that the supervisor may enter upon the private lands adjoining or near a highway, and construct ditches, etc. It is then provided that, together with two disinterested persons, he shall at once proceed to the locality and assess such damages in favor of the owner of the lands as in their judgment seems right. Afterwards, it is provided that the owner shall be notified and shall have leave to select one of the appraisers, and shall have notice of the time and place of the meeting of the appraisers, with the privilege of offering evidence as to damages. Within ten days after the assessment, it is provided that the assessment shall be reported to the trustee, and that he shall pay the damages assessed out of the township treasury.

With some hesitation we have concluded that, under such circumstances as authorize the supervisor to enter upon the land of another, he may do so, and locate and build a ditch, drain, dam, and the like, or remove gravel, etc., as provided in the statute, and immediately thereafter notify the land-holder, who may select one appraiser, and the supervisor an-

other, who shall appraise the damages, and report to the supervisor, who shall report to the trustee within ten days after the appraisement, and that it then becomes the duty of the trustee, from funds in the township treasury, to pay the amount of the assessment; that it is not necessary to first assess and tender the damages.

It is provided, however, that no person's land shall be entered upon when material can be found on the roadway, or convenient in the district on the roadways, nor when drainage can be made on the roadway at a cost not exceeding the cost and damages of entering upon private lands and appropriating them to that purpose. It is then provided that in all cases contemplated by this section a demand shall first be made of the owner of the land before entering upon it or taking material. If he assent, he may point out the material and the location from which it is to be taken, and, if accessible and fit for the purpose intended, it shall be taken therefrom. If consent be refused by the owner, the supervisor shall notify him of his intention to so enter, for what purpose, for what time, and point out the land to be occupied or the material to be taken.

If the provision next before the last, as we have stated these different provisions, stood alone, it could not be contended with any plausibility that the land-holder would have the right to point out to the supervisor the place or locality whereon he should dig a ditch or drain or build a dam, and that his right to make a choice would be confined to the locality from which material should be taken; but when we take the preceding and following provisions, and construe all of them together, we have no difficulty in arriving at the conclusion that it was not the intention of the Legislature to confer upon the supervisor unlimited authority to enter upon private lands and appropriate such part thereof as may please his fancy for the purpose of constructing ditches, dams, etc., thereon, or removing dirt, gravel and the like.

1st. No person's land shall be taken if the roadway can be utilized at the same cost.

2d. Demand shall first be made of the land-holder in all cases contemplated by this section.

3d. The provision that if he assent he may point out the material, etc.

4th. When consent is refused the supervisor shall notify the land-holder of his intention to enter upon the land, his purpose in so doing, the time at which he will do so, and he shall point out the land to be occupied or material to be taken.

Why make a demand of the land-holder if the supervisor has unlimited power to appropriate private land and locate a ditch or drain? We can see no good reason for so doing; but if the land-holder has the right to make a selection for the location of the ditch, then the reason for giving him notice is apparent. If the land-holder is only allowed to point out where the material is to come from, we can see no reason for the provision that, in case he refuse, the supervisor shall point out the land to be occupied. There would be no occupancy of the land in removing material from it; and then, the disjunctive is used, " point out the land to be occupied or the material to be taken."

Our conclusion is, that the statute only authorizes the location of a ditch on private lands when there can not be suitable drainage made in the roadway at the same expense that would follow in making it upon such private lands; that if the supervisor can not provide suitable drainage in the roadway, then the land-holder has a right to select the location for the drain or ditch, as the case may be, and if the selection is accessible and suitable, it is the duty of the supervisor to adopt it; but if the land-holder fails to point out the location, or if the selection he makes is not accessible or suitable, then the supervisor may make the location.

We are further of the opinion that if any question is made as to whether proper drainage can be made in the highway,

or, where the land-holder has made a selection, as to its being a suitable one, the land-holder has a right to have the question tested in a judicial proceeding, and if irreparable injury will follow if the ditch or drain is constructed as insisted upon by the supervisor, an action for injunction is the proper action. If proper drainage can be made in the roadway, then the supervisor acts without any legal authority, and is a wrong-doer, if he undertakes to construct a ditch on private lands.

If the supervisor can not provide suitable drainage in the roadway, and the land-holder points out a location for the ditch, and the same is accessible and suitable, it is the supervisor's duty to accept the location thus pointed out, and if he refuses to do so, and locates the ditch elsewhere, he acts without authority of law, and is a wrong-doer. These are questions, not for the determination of the supervisor when raised, but for the courts, and if the action which the supervisor is threatening to take will, if carried into execution, work serious injury to the land-holder, and such as can not be fully compensated in damages, an action for injunction is the proper action.

We have examined the case of McOsker v. Burrell, 55 Ind. 425. That was a suit for damages for the obstruction of an ancient watercourse and the diversion of the course of the water, which obstruction and diversion caused an overflow of appellee's land to his damage. That case rests upon section 16, 1 R. S. 1876, p. 858. Under that section of the statute the supervisor was empowered to enter upon any land adjoining or near to any highway, and construct ditches, etc., necessary for the proper construction, repair or preservation of any highway within his district. This court in that case says that the statute authorized the supervisor to do just such acts as he is charged with having committed; that there were only two conditions necessary to the exercise of the authority given him, (1) that the land on which he entered must have been adjoining or near to a highway in his district, and (2)

that what was done must have been necessary to the construction, repair or preservation of a highway. It seems that the conditions existed, for the court uses this language : " When such conditions exist, the supervisor may perform the acts, whether they damage any person or not. If they do cause damage, and the damage ·is of a character entitling the injured party to redress, the statute points out the mode in which it may be obtained."

The statute under consideration contains the same conditions that were in the former statute, with the additional and more important ones to which we have referred.

It not only does not appear in the complaint before us that the conditions existed authorizing the supervisor to take action, but it appears therein, and is admitted by the demurrer, that the conditions did not exist.

We reach the conclusion, therefore, that the complaint is good, and that the demurrer should have been overruled. We are of the opinion that the appellee Enochs is a proper party to the action, and that the complaint is good as to him.

We need not determine whether the court erred in dissolving the temporary injunction.

The judgment of the court below is reversed, with instruction to overrule the demurrer to the complaint, and, upon a bond being filed by the appellant, to the approval of the court, that a temporary injunction be granted.

Judgment against the appellees for costs.

Filed March 12, 1889.