(Summit County Court of Common Pleas.)

MINER H. HOWE, suing for himself individually and on behalf of the
Village of Cuyahoga Falls, v. JOHN F. SEIBERLING, WILL CHRISTY,
JAMES CHRISTY, JR., and the VILLAGE OF CUYAHOGA FALLS.

1. An injunction irregularly issued must be obeyed until dissolved on motion or some other
   due process.
2. Where a plaintiff, in good faith, seeks an injunction against a defendant, and before
   filing his petition in the office of the clerk of the proper court, presents the same
   to a judge thereof, who allows the injunction sought, and immediately thereafter
   the petition is placed with the clerk of said court, who issues a summons and then
   files the petition in his office, and the summons is immediately served, all of said
   acts being continuously and consecutively done so as to constitute a continuous
   transaction, such injunction is deemed granted " at the time of commencing the ac-
   tion," as is provided for in section 5573 of the Revised Statutes of Ohio, and is valid
   and binding on the defendant.
3. If *after* the filing of such petition in the clerk's office, no summons is issued and served
   on the defendant, and his attorney makes and files an affidavit of prejudice in the
   case under section 550 of the Revised Statutes of Ohio, the filing of such affidavit is
   an appearance to the action, and obviates any necessity for the subsequent issuance
   and service of a summons.

(Decided September Term, 1894.)

HEARING on application for attachment to issue against defendants.

HAMILTON, J. (orally).

The question before the court arises upon an application filed on July
21, 1894, complaining that an injunction had been violated by John F.
Seiberling and two others.   An affidavit is filed, setting out the facts show-
ing, if true, that the injunction, or alleged injunction, granted in this cause,
has been violated.   A complaint is attached to this affidavit which is in sub-
stance that, " The plaintiff, Miner H. Howe, charges that the said William
Christy, James Christy, Jr., and John F. Seiberling, by the said act set
forth in the foregoing affidavit of C. M. Walsh, were guilty of disobedience
and of resistance to the lawful order of injunction heretofore, at one o'clock
A. M., July 19, 1894, issued by Judge A. C. Voris in this cause, and the
said plaintff, Miner H. Howe, asks that the said William Christy, James
Christy, Jr., and John F. Seiberling, be each proceeded against as for con-
tempt for such disobedience and resistance of each, and that such order of
injunction be enforced."

There is an answer filed to this complaint by each of these parties thus
charged with disobedience, and it is, in substance, that they deny that
either of them have disobeyed any order of this court, or of any court hav-
ing jurisdiction of the subject-matter, and they further allege that this cause
had not been commenced at the time of this alleged order, and has never been
commenced, no summons ever having been issued in it, after the filing of
the petition in the cause; they say they have entire respect for and desire
to obey every lawful order of this court or of any judge thereof.   "They fur-
ther say that whatever was done by said Hon. Alvin C. Voris, judge as
aforesaid, in reference to any order of injunction in any way connected
with this cause, or claimed to be connected with this cause, was so done
prior to the filing of any petition in this action with the clerk of this court,
or in the office of said clerk, or with any person connected in any way with
said office, and before any petition or other pleading or paper in any way
connected with this cause was ever handed to or seen by the clerk of this
court, or any person connected with the office of such clerk; and these de-
fendants say that such order, or alleged order, made by said judge prior to
the commencement of this action as aforesaid, was, and is, wholly null and
void; and the defendants say that nothing has been done by them, or any

of them, in violation of said alleged order, or which by said alleged order is or was forbidden to be done, and nothing has been done except under the advice of competent and reputable attorneys at law, and in the full belief that whatever was so done, they and each of them had a legal right to do, without in any manner manifesting thereby any contempt for this court, or any order of such court or judge, made in this action. It is further said that as to defendant, James Christy, Jr., these defendants deny that since the hour named in the affidavit to which this is an answer, as that at which an order of injunction was allowed againt them, the said James Christy, Jr., has in any way done anything, which by said order, or alleged order, he was commanded not to do.

"These defendants say that since the filing of the petition in this action no summons has ever been issued by the clerk of this court; nor has any order or alleged order of any kind ever been issued by the clerk of this court, or out of the office of the clerk of this court, or by any person in any way connected with said office of the clerk of this court.

"These defendants say that the only writ or writing of any kind ever issued or signed, or attempted to be issued or signed, against them in this action, was so signed and attempted to be issued and delivered to the sheriff of this county prior to the filing of any petition in this action, and before any petition in this action had ever been taken to the office of the clerk of this court; and so these defendants say that this case has never yet been commenced against them, or either of them, or any other person.

"Further answering, the defendants say that on the 20th day of July, 1894, the plaintiff, Miner H. Howe, for himself and village of Cuyahoga Falls, Ohio, filed a petition in this court against all the defendants sought to be sued in this action and certain other defendants, alleging the same matters as the cause of action against them as here alleged in the petition in this actson, and seeking the same relief in every particular as is sought by the petition in this action; and after the filing of said petition, which is in cause No. 6662 of this court, one of the judges of this court allowed a restraining order against all the defendants named in said cause No. 6662, including each of these answering defendants. Which restraining order was exactly the same as that alleged to have been allowed in this action, and the said order so allowed in said cause No. 6662 has been in every particular obeyed by each of these answering defendants, except to the extent that the same has been subsequently modified by order of this court, as hereinafter set up."

It would seem that this action was originally brought to prevent the laying down of a street railroad in the village of Cuyahoga Falls; that this restraining order was obtained about one o'clock on the morning of the 19th of July; that certain proceedings were had thereunder, and that on account of the question as to the jurisdiction of the judge in making that order, a new suit was commenced, perhaps the following day, embracing the same parties, and perhaps one or two others, and seeking to attain the same results, so as to avoid the question of lack of jurisdiction, and an order was made by another judge, and that was served on the evening of the 20th of July, and since that, upon hearing before still another judge of this district, that judge, in view of the fact that the road had substantially been completed, perhaps not fully, but nearly so, and the trolley wires nearly put up, that he thought the public interests would be best subserved, and the interests of all parties, to let the road operate, and refused the temporary injunction, and the parties have since completed the road, and it is in operation.

There is an agreed statement of facts in this case, and I don't know that I can do better than to state it substantially as stated by the parties.

Attorney Voris, in making this statement of facts, which was agreed to by all parties, says: "I took the petition in this case to Judge Voris's house before it had been filed, and before it had been taken to the office of the clerk of the court, or even shown to the clerk or any person connected in any way with his office. At one o'clock A. M., July 19th, Judge Voris, after reading this petition, granted the order which bears the file mark, 'Filed July 19, 1894,' and which bears the date, 'One A. M., July 19, 1894,' that is to say, he signed that paper which had been previously prepared by me, and was presented by me to him along with the petition.

"Thereupon, I took the petition and the order which had been signed, to F. J. Libis, deputy clerk, at his house, and at ten minutes after one o'clock A. M., or immediately before that time, handed the petition and order to him. When I use the word 'order,' I mean the paper writing signed by Judge Voris, of the date already stated. I had with me the summons which was served in this case, which I had already filled out, except the signature by the clerk, and copies of which had been prepared at my office for the use of the sheriff. This summons contained the seal of the court, which had been impressed thereon by Mr. Libis some days or weeks before and at a time when it was anticipated by us that we might need summonses in another litigation. At the time these summonses received the impress of the seal of the court, the present litigation was not in any way contemplated, but this blank summons, happening to be in my office, and to have the impress of the seal upon it, we used it upon this occasion.

"Mr. Libis thereupon, at his house, signed the summons, as appears upon its face, and placed the indorsement thereon at the same place, and delivered the same to the sheriff, and at that time the petition in this cause had not yet been taken to the court-house. At the same time that I handed the petition and the summons to Mr. Libis, I handed also to him a paper which is indorsed: 'Order of Injunction,' and which had been filled out by me, except the signature of the clerk. Mr. Libis signed this writing, and delivered the same to the sheriff. The seal of the court had been impressed on this writing by Mr. Libis some days or weeks before, and when this litigation was not thought of, and the blank order had been in my office during the interval from the placing of the impress of the seal upon it, until the night in question.

"Thereupon, Mr. Libis got into the buggy with the sheriff and myself, and we carried him down town, and he went to the court-house, getting to the court-house about half-past one. He thereupon stamped the petition as filed July 19, 1894, and began docketing the case. When he reached the court-house, he found David L. Marvin, one of the attorneys for the defendants, waiting at the court-house, and after the filing of the petition at the court-house, David L. Marvin obtained the names of the parties to the action, put them into the paper indorsed, 'Affidavit of Prejudice,' swore thereto before the said Libis, and filed the same in the case, this filing being done immediately after the filing and docketing of the case.

"A deputy sheriff, to whom some of the copies of the summons had been given, went to the house of John F. Seiberling, and served him personally with a copy of the summons. The sheriff went by street car to the Falls, and personally served William Christy, about two o'clock A. M., or shortly thereafter, with a copy of the summons, and showed to him the order of injunction, and within a few minutes after two o'clock A. M. showed the order of injunction to Charles H. Howland, Mr. Sadler and Mr. Atterholt, attorneys for the defendants in this case. The sheriff also notified the men who were engaged in working on Front street that an injunction had been granted prohibiting the construction of a street railroad, and asked them to stop work.

"Work upon Front street, between Prospect street and Broad street, was stopped for a few minutes, but shortly after two o'clock A. M., David L. Marvin came to the Falls, and after consultation with his associate attorneys, the work was renewed by those in charge, and the work of constructing the street railroad between Prospect street and Broad street was continued until after service of the order of injunction granted in case 6662, which order was served after nine o'clock P. M. Friday, July 20, 1894, the work being continued all of Thursday and Friday."

It also appears in the affidavit in this case, to which this statement is attached perhaps, or this affidavit in reference to the contempt proceeding, that Mr. Seiberling having been served about the hour of two o'clock, July 19th, had the next day come over and saw this work in progress, and that he was in charge of the work, or the employer of the parties who were doing this work, and stood by and saw the work go on, without any protest, or any order or any direction to them to cease.

This agreed statement of facts does not cover everything that there is in it, because there were some other statements made, and some other testimony given. It was agreed, among other things, that the precipe was filed, for instance, for the issuance of this summons—whether duly filed or not, was not conceded; that a bond was given and approved; and third, that James Christy, Jr., had no participation in the violation of this order, if it be violated at all, and, hence is not guilty of this charge; and, fourth, that the other two defendants charged with violating the order, are guilty, if the order was a valid one; fifth, that on July 20, 1894, said plaintiff Miner H. Howe and others, brought an action against said Seiberling and others, to obtain the same relief, in substance, as they sought in the present case, and such proceedings were had thereon, in substance, as set forth in defendants' answer to the complaint filed in the contempt proceedings herein, and that the tracks, etc., have now been laid, and the railway is now being operated as in said answer set forth.

There was introduced in evidence the petition in this case (No. 6661), the order of injunction, the summons and the return thereto, and the affidavit of prejudice that was filed by Mr. Marvin; this latter was offered in evidence, under exception of plaintiff.

It is contended by defendants that no action on which this proceeding for contempt is founded, was commenced when the alleged order of injunction was granted, nor has it since been commenced, no summons having been issued after the filing of the petition.

It may be said, and I believe it to be conceded on both sides of the controversy in this case, that an injunction irregularly issued must be obeyed until dissolved on motion, or some other due process. That undoubtedly is the law. The same may be said, if the injunction be erroneously issued, provided there be jurisdiction in the judge issuing the order, over the subject-matter and the persons involved; and I think it may also be said to be the law, beyond any doubt, that if there be an absence of jurisdiction to act in any given case, and a court or judge should undertake to perform some judicial function in such case, its or his act would be *coram non judice*, unauthorized and void.

The main question, and the serious question in this case, turns upon the proposition of what constitutes or what may be deemed the commencement of an action. And the question involved in this case is one which affects the practice of our courts, and is a material one to be determined, both for the courts, and litigants and the bar.

The practice has obtained through this jurisdiction, I am quite sure of making application for a temporary injunction or restraining order when the necessities of the case seem to imply it, to a judge at chambers before the petition has been filed, and either an order made by him, upon

a separate piece of paper, or endorsed upon the writ or opon the petition itself, of such allowance, and the parties do then proceed at once and file that petition and that allowance, and have the summons issued, and the suit is commenced. That practice, I say, has obtained to some extent within my own knowledge. Whether that is warranted, whether such an act by a judge is nonjurisdictional, viz., he has no power to do it, becomes of course, quite an important question to be determined as regulating the practice in that regard.

Section 5035, of the statutes of this state, reads as follows :

"A civil action must be commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued 'thereon.' It will be noticed that the action is to be commenced and must be commenced, in pursuance of this language, ' by filing in the office of the clerk' * * * ' and causing a summons to be issued thereon.' "

Section 5573, Revised Statutes, relates to the granting of an injunction or a restraining order, and it provides that, " the injunction may be granted at the time of commencing the action, or at any time afterward, before judgment, etc."

The question then turns upon the proposition of what is to be deemed the time of commencing an action.

It is entirely patent that two periods of time must be deemed to have been in the minds of the legislature when this act was passed, to-wit : *at the time of commencing the action*, or *at any time afterwards*. By section 5035, an action is to be deemed commenced upon the filing of the petition in the clerk's office, and causing a summons to be issued thereon.

The filing of a petition, it is said by the Supreme Court of this state, in the 16 Ohio St., page 284, is not alone sufficient, but a summons must also issue, in order to constitute a commencement of an action.

Certain it is that the allowance of an injunction, when it is said that it may be made *at* the commencement, can be made at some other time than after the petition has been filed, and after a summons issued, because after the petition has been filed and a summons issued, whatever is done thereafter is done after the action is commenced; an issuance, I understand to mean, a transfer of the summons to the sheriff, the writ having passed out of the hands of the clerk who issued it; but the language of this act is that the injunction may be granted at the commencement, or after.

Now, what constitutes the commencement? The filing of the petition alone is not sufficient; that it is not the completed commencement at least. To make a completed commencement, both things, as I have said, must be done. It is a practice that has obtained, at least in our courts, where I have been familiar with the practice, to come to room one, where the judge who attends to miscellaneous business is in session, present a petition to him before it has been filed; he looks it over; if he thinks an injunction or temporary restraining order is needed and permissible, he makes an order; it has been taken from there to the clerk's office, in the same building, it is true, and filed. That practice has not been universal, but has been adopted more or less. In such case, the petition would not be on file, not be near the clerk's office, but the court has acted upon it prior to its being taken there, and it immediately goes there, and a summons is issued; and the question is, is that good practice? If it be good practice, if it be permissible rather, whether good practice or not, then the fact that the judge is in the court-house somewhere when he makes the order, it seems to me, would make it of no more binding force or effect than if he was in the next house to the court-house, and if so, at his house near by, somewhere. The question at once arises, whether, where an act is thus done by a judge, on presentation of a petition to him, and he looks it over, and there is a continuous action from that on, to get out your summons, and to serve your

process, whether that may be regarded as a part of the *res gestæ*, and be re-garded as "at the commencement of an action;" or, whether it must be technically held to be wrong, and if so, that he had no jurisdiction at all in reference to it, until after something had been done towards the commence-ment of it, to-wit: by filing a petition.

By section 5577, Revised Statutes, it is provided that: "The order of injunction shall be addressed to the party enjoined, shall state the injunc-tion, and shall be issued by the clerk; when the injunction is allowed at the commencement of the action, the clerk shall endorse upon the sum-mons, 'Injunction allowed,' and it shall not be necessary to issue the order of injunction; nor shall it be necessary to issue the same when notice of the application therefor has been given to the party enjoined; and the service of the summons so endorsed, or the notice of the application for an injunction, shall be notice of its allowance." It is entirely manifest that it was not designed by the legislature, when that act was passed, that be-fore a court could act, or a judge could act, the petition must have been filed, and a summons issued; because, if the summons had been issued, and passed from him to the sheriff or to some other officer for its execution, then certainly the summons could not be endorsed 'Injunction allowed.' It must be at a time prior to the issuance of the summons; it need not neces-sarily be before the filing the petition, it is true, but certainly before the issuance of the summons.

There is not much light to be obtained upon this subject in the state of Ohio, so far as I have been able to investigate it. There is a somewhat analogous case in the 35 Ohio St. 661. It will be noticed that the statute in relation to the issuance of an attachment is almost entirely—and for the purposes of this case may be regarded as entirely—analogous to this in re-lation to the issuance of an injunction, and the language of that section (5521) is in substance: "In a civil action for recovery of money the plain-tiff may, at or after the commencement thereof, have an attachment against the property of the defendant, upon the grounds herein stated, etc." The Supreme Court, in the 35 Ohio St. 661, say that "An attachment, under the civil code, is an auxiliary proceeding in an action, which may be sued out by the plaintiff, at or after the commencement of such action, by filing a petition and causing a summons to issue thereon." In that case, about 11 o'clock A. M., an order of attachment was issued upon the filing of an affi-davit and giving bond. It was served and returned at about 3 o'clock P. M., but no petition was filed until about 6 o'clock P. M., of the same day. *Held*, "that the attachment was issued without authority of law, and as against other attaching creditors and lienholders gave no priority. In an action by one of several attaching creditors against the others, after judg-ment, to determine the priority of the several liens acquired by seizure un-der the respective orders of attachment, the lien of any attaching creditor may be defeated by showing that his attachment was issued without the authority of law." It will be noticed in this case that it is declared to be issued without the authority of law under such circumstances, the affidavit having been filed, bond given and property seized some six or seven hours before a petition in the case was filed, and that as against other attaching creditors and lienholders, it must be regarded as void.

The Supreme Court have made a distinction between the attaching creditors and the defendants in suit. In the 19 Ohio St., 296, it will be remembered that no bond had been given—an attachment obtained, but no bond given. The subsequent attaching creditors undertook to defend on that ground, and to have the first attachment set aside. The Supreme Court said they could not do it—that that was a matter that interested only the defendant himself, and he might take objection to it; but as long as he did not, it must be regarded as waived, and the subsequent attach-

ing creditors had no right to interfere with it or make any objection about it, and yet the language of our statute upon that subject is that no attachment shall issue until a bond is filed. It would look very much as though that was unauthorized and contrary to law, and yet the Supreme Court say that is only an irregularity, and one which concerns only the defendant himself, and the attaching creditors cannot interfere with it. Here the attaching creditors may interfere, it is said, under the facts in the 35 Ohio St. case, because it is a race between the creditors of an insolvent debtor as to who shall gain priorities, and they have an interest in that question, and they cannot get priorities unless they pursue the method pointed out by the attachment law, and as to subsequent attaching creditors the proceeding was held to be void, and conferred no right whatever to issue the attachment.

In the case in the 16 Ohio St., 284, to which I have had occasion once before to allude, the action there was an error proceeding. A petition in error had been filed and an application made for the allowance by the Supreme Court of a petition in error to be filed in that court, but no summons was ever issued, and the Supreme Court held that no summons ever . having been issued upon it, and subsequently the statute of limitations being pleaded, that the action was not commenced, and it could not be maintained. But in that case the only filing of the petition was a filing prior to the action of the court allowing the petition in error to be filed, and the language of the statute was that after the allowance of the filing the petition must be filed and a summons issued. That never was done, and yet the court say: "For though the petition, when first filed with the application for leave, could only be regarded, for the purposes of the motion then pending, as an assignment of errors, yet, after the granting of leave the plaintiff left it on file, properly indorsed by the clerk, and we think the objection that there should have been a distinct act of refiling after leave granted, is too technical and unsubstantial to require grave consideration."

That language was again adverted to in the 43 Ohio St. 57, and sanctioned by our Supreme Court. That is only an indication that a technical construction of the statute, when the substance is attained, will not be used to avoid the action entirely and annul it.

There is not very much light to be had by referring to the other statutes, and yet I do so, because in the argument, it has been alluded to; for instance, the statute in relation to the appointment of receivers. And my attention was called to a case of *McBride* v. *Marcellus*, in the court of common pleas of Cuyahoga county. That case was for the appointment of a receiver, and it was a race between general creditors, who were seeking to have a receiver appointed, and an execution creditor, who had taken out judgment upon a cognovit note, and as I remember the case and the facts, though it did not come personally before me, the receiver had not given his bond, had not taken possession of the property before execution was levied, and the facts in that case were not analogous to this, and throw but very little light upon it. The section of the law itself is 5587, and it varies somewhat from the statute in relation to the allowance of injunctions and of attachments. It is therein provided that, "a receiver may be appointed * * * in actions pending in such courts respectively, in the following cases, etc." The action must have been commenced before there can be an action pending; that is the language of that act, as I understand it, and it differs in that respect from the injunction statute. There it may be done 'at the commencement or after;' here it is 'in actions pending,' and an action must certainly have been commenced before there can be said to be a cause pending; it differs in that regard; and so it is in the statute in relation to arrests, which is section 5491 & 2; there it speaks

of it in the same way, 'in an action' an order of the arrest may issue, but there it also provides in some one of the sections that the order of arrest may issue with the summons also ; and in adjudicating upon the section of the statute in relation to the attachment law, our Supreme Court, in the 9 Ohio St. 388, have said, in substance, that while an attachment must set out the reasons showing the facts, etc., that if it is substantially complied with, that is sufficient.

There were cited a decision by the Circuit Court of Hamilton County reported in the 32 W. L, B., page 377.    That is a case, so far as it goes, which holds to the proposition even broader than I intend to hold here— it holds that, where an injunction had been granted the night before and the petition filed the following morning, the injunction would take effect when the petition was filed, and not until it was filed and bond given and summons issued.    I do not think it is directly in point, because it was in a measure *obiter*, so far as that branch of the case is concerned—it was not, perhaps, necessary to the decision of the case, but naturally and directly did arise in considering the question involved in that case; but so far as that is an authority, it is certainly an intimation of the circuit court of Hamilton county, that the ruling made here is correct, and it even goes much further than I have been willing to go in this case.

My attention has been called to the 113 Mass., 411, as authorizing the practice of issuing injunctions, or allowing injunctions prior to the filing of the petition, where a case of necessity seemed to warrant it, and that was done, it would seem, under the rules of the Supreme Court of Massachusetts, and by turning to those rules, it will be observed that they have special rules, regulating the practice of that court, and of the other courts also, as well in reference to the common law practice as to the equity practice.    I take it, though I have not examined the statutes of Massachusetts, that those rules are in compliance with them, and not antagonistic to them.    I think it will also be found that upon an examination of the judicial history of Massachusetts, that the old common law rules of practice at law as well as in equity, were never fully adopted in Massachusetts; but it is peculiar to itself, and has grown up under the statutes of that state and under the rules of court as made by the Supreme Court of that state.    Hence, there is nothing in the case itself that will aid us in the solution of these statutes, except as an expression of opinion in Massachusetts by the supreme judicial tribunal, that that practice is well to obtain in cases of necessity, but it does not throw very much light upon the question we have here.

I go back for a moment, to consider the affidavit of prejudice introduced in this case, which is as follows: " U. L. Marvin, being duly sworn, says that he is one of the attorneys for the defendants in this action, and duly and fully authorized in the premises, and that Hon. Alvin C. Voris has a bias and prejudice against the defendants in this action; and this affidavit is made under section 550 of the Revised Statutes of Ohio."

One objection to this proceeding was, that no summons was ever issued in this cause, *after* the filing of the petition.    If the issuance of a summons, and the allowance of an order of injunction, and the filing of the petition may all be treated as one transaction, one continuous act, then it is of very little consequence, so far as the court views it, as to which act was done first in point of time, so long as it was a continuous transaction, one thing, one act, a part of the *res gestæ* of the commencement of this action ; but whether that be so, or not, the evidence in this case shows that it was after this petition was filed, and that after this summons had been issued, in the manner in which it was issued, that this affidavit was filed ; and it is said to have been filed by authority, and undoubtedly it was.    I suggest whether or not that filing of that affidavit is not an ap-

pearance in this case, and whether such an application made, to-wit, that some other judge be called in to finally try the merits of the case, is not a full and complete appearance in the case, and whether it would be of any sort of consequence whether any summons should have been issued at all. I am inclined to take that view of it, and that there is an appearance by defendants entered in this case. And so far as the service therefore, of any summons, is concerned, or the time of the issuing of the summons, it has but very little significance in this case.

My attention has been called to a case in the 6th California Reports, 319, where a writ of *habeas corpus* was taken out to release a man who had been arrested. There were two causes of his arrest; one of them was that he had been arrested upon an order that had been issued by a judge, an order of arrest issued 2 or 3 days prior to the filing of any complaint in the case; and the language of the California statute, providing for orders of arrest in civil actions was, it could issue "in an action," it was not "at the commencement of an action," and in any event it could in no sense be said to be any part of the transaction, if a man can have an order of arrest issued without any complaint at all being made, anywhere from two or three days before, he can for a year before; it was in no sense a continuous transaction; in can in no sense be said to be any part of the *res gestae* of the transaction. And hence that case holds that the order of arrest was unauthorized, wholly unauthorized and void, and it seems to me properly so. It was certainly no part of the transaction; it was a statute that read differently from the one that we have here. It has not near as much force or application as the 35 Ohio St. case has, and that, I think, is the strongest case which the defendants have in this matter, and it has given me more or less difficulty to avoid the force and effect of it, and the only way in which it can be done, if it can be done at all rightfully, is to say that the transaction in the 35 Ohio St, was an issuance of an attachment against an absconding debtor; 1st, it was a question between creditors; it was a race between them; they were, therefore, directly interested in it; 2nd, that what the creditors who first seized the property did, could in no sense be said to be a part of the same transaction, seven hours after they had their affidavit filed, their bond given, and their attachment issued, and the seizure made, they filed a petition; they did not proceed at once, continuously, in the commencement of the action; and it was in no sence a part of it; there was certainly a *hiatus* between the two, and it does not stand in the same position as the one we have here.

If it be true that you must absolutely file a petition first, and issue a summons first, or do either or both before the application for injunction can be passed or allowed, then it must follow that if a judge goes into the clerk's office with a litigant, and the petition is shown to him, not handed to the clerk, but the petition is shown to him, and the judge writes upon the back of that piece of paper an allowance of an injunction or a restraining order, and it is then handed over to the clerk and he files it, and issues a summons upon it, then technically, if that rule is to obtain, there is no petition filed, no summons issued, nothing done, except that you stood in the presence of the clerk, or in the clerk's office at the time the injunction was allowed. Where are we to draw the line and make the distinction? I do not think it could be said for a moment that such a transaction as that would not be a legitimate transaction, and that you must wait until the petition is filed and then hand it back to the judge and let him make his allowance, and then hand it back to the clerk again and have him issue summons, and put upon the back of it " Injunction allowed." It seems to me, in the language of the 16 Ohio St., that those are technicalities which ought to be thrown aside wherever there seemed to be a transaction that was continuous, in good faith, and it all consti-

tutes a part of the *res gestae* of the affair, that "at the commencement" must mean, that within the meaning of our statute, after your petition is drawn, such proceedings are as immediately, consecutively taken to effect the commencement of your action. Let us look for a moment at Webster's Dictionary, and see what the definition of "*at*" is. It says: "Primarily this word expresses the relations of presence, nearness in place or time, or direction toward, as, at the ninth hour; at the house; to aim at a mark. It is less definite than *in* or *on*; at the house may be in or near the house. A relation of proximity to, or of presence in, or on something; as, at the door; at your shop; at home; at school; at hand, etc."

I have concluded that it cannot be said, and ought not to be held, that a court, or a judge, acting in good faith, under the facts of this case, was without jurisdiction to grant a restraining order, and that when plaintiff acts in good faith in commencing an action, doing a thing consecutively after the petition is drawn, just as fast as he could do it, it may fairly, in the spirit of the law, and in view of the ends to be attained, be said to be 'at the commencement' whenever that thing is consecutively and continuously pursued and done as fast as it can be done, and that it will not do to stand upon the technicalities and the precise instant of time, and to say that a litigant can question, when he sees a process of a court issued and under seal, the act of the court or judge verified by the seal of the court—say that I will not obey that, because, just one minute before, or two or three minutes before, or thirty minutes before, as in this case, the petition was filed, this order was made; but should rather, if the correctness or validity of the order is questioned, apply to the court to vacate it.

I am, therefore, of the opinion that an attachment should issue in this case against defendants John F. Seiberling and William Christy, and the application for attachment as to defendant, James Christy, Jr., is refused.

*Baird & Voris* and *L. A. Russell*, for plaintiff.
*Marvin, Sadler & Atterholt*, for defendants.