## PETTIBONE *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF IDAHO.

No. 1241. Argued February 1, 2, 1893. — Decided March 6, 1893.

In a prosecution for conspiracy, corruptly and by threats and force to obstruct the due administration of justice in a Circuit Court of the United States, the combination of minds for the unlawful purpose and the overt act in effectuation of that purpose must appear charged in the indictment.

A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful by criminal or unlawful means.

When the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment; while if the criminality of the offence consists in the agreement to accomplish a purpose not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out.

An indictment against a person for corruptly or by threats or force endeavoring to influence, intimidate, or impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, or set out facts that show knowledge or notice, on the part of the accused that the witness or officer was such.

A person is not sufficiently charged in such case with obstructing or impeding the due administration of justice in a court, unless it appear that he knew or had notice that justice was being administered in such court.

PLAINTIFFS in error were indicted under sections 5399 and 5440 of the Revised Statutes of the United States, (the latter as amended by the act of May 17, 1879, 21 Stat. 4, c. 8,) which are as follows:

"SEC. 5399. Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any witness, or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both."

" SEC. 5440. If two or more persons conspire either to commit any offence against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years, or to both fine and imprisonment in the discretion of the court."

The indictment alleged that on May 28, 1892, suit was commenced in the United States Circuit Court for the District of Idaho, wherein the Bunker Hill and Sullivan Mining and Concentrating Company was complainant, and the Miners' Union of Wardner and others were defendants; that a writ of injunction was duly and regularly issued therein by the court, directed to plaintiffs in error and many others as defendants, which writ of injunction was set out in full in the indictment, and ordered as follows :

" In the meantime and until the further order of this court herein, the said defendants and each of them, their aiders, attorneys, officers, agents, servants and employés be, and they are hereby, severally restrained and enjoined from in any manner interfering with the complainant herein in any of its work in and upon or about its said mining claims, to wit, the Bunker Hill, the Sullivan, and the Small Hopes Lode mining claims mentioned in the complaint herein, or in any part thereof, and from in any manner by force or threats or otherwise making any attempts to intimidate any employé of the complainant herein, or from attempting to prevent by any force or intimidation any employé of the said complainant from proceeding to work for the said complainant in a peaceful, quiet, and lawful manner in and upon any part of the aforesaid mines or mining claims, or in or upon any works of the said complainant therein or thereabouts or at all, and that they, the said parties aforesaid, be, and they are hereby, further enjoined from intimidating or threatening or by any force, threats, or any intimidation trying to prevent any employé of the complainant herein from working in or upon the aforesaid mines mentioned in the complaint herein, or at the

mills of complainant, or in or upon any mining or other property of complainant, or from preventing any one from entering the service of the complainant herein, or in any unlawful manner interfering with the business of said complainant in employing persons to work upon its said property, or from going upon any part of the said complainant's property without permission from the complainant or its agents or employés so to do, or in any manner entering upon the works of the complainant, or within the buildings of the complainant, without its consent or the consent of its managers, agents, or employés, and reference is hereby had to the bill of complaint herein, to which your attention is hereby directed, until the further order of this court or the judge thereof; and the foregoing restraining order is also directed against the agents, servants, aiders, abettors, members, and associates of the defendants or either of them."

The indictment thereupon averred that the defendants, on July 11, 1892, and while the writ of injunction was in full force and effect, "at Shoshone County, within the Northern Division of the District of Idaho aforesaid, did unlawfully, corruptly, fraudulently, and feloniously conspire, combine, confederate, and agree together to commit an offence against the United States as follows, to wit," said defendants did, then and there, "unlawfully, corruptly, fraudulently, and feloniously conspire, combine, confederate, and agree together to intimidate, by force and threats of violence, the employés of the said Bunker Hill and Sullivan Mining and Concentrating Company, then working in and upon the mines of the said company and within and around the mill and other buildings of the said company in, said Shoshone County, said mines, mill, and other buildings of said company being then and there the mines, mill, and other buildings mentioned and described in said writ of injunction, with the intent then and thereby on the part of the said " defendants (naming them) " to compel the employés of the said Bunker Hill and Sullivan Mining and Concentrating Company to abandon their work in and upon the mines, mill, and other buildings of the said mining company last mentioned;" that the defendants "did

then and there further unlawfully, fraudulently, corruptly, and feloniously conspire, combine, confederate, and agree together to intimidate, by force and threats of violence, the officers and agents of the said Bunker Hill and Sullivan Mining and Concentrating Company, with the intent then and there and thereby, by means of said force and threats of violence, to compel the officers and agents of said mining company to discharge and dismiss from the employ of the said mining company all employés (other than such persons as were members of what is called the Miner's Union) who were working either upon or within the mines of the said company and in the said company's mill and other buildings, which said last-mentioned mines, mill, and other buildings are the mines, mill, and other buildings mentioned and described in the aforesaid writ of injunction issued out of the said United States Circuit Court."

The indictment further averred that on July 12, 1892, the defendants, while the writ of injunction was in full force and effect and the suit in which the writ issued was still pending and undetermined, "in aid of and in furtherance of and for the purpose of effecting the object of the said unlawful and malicious combination and conspiracy formed and entered into as aforesaid and for the purpose and object aforesaid, did, on the said 12th day of July, 1892, at the county and State aforesaid, unlawfully, fraudulently, corruptly, wilfully, and feloniously, by force and violence and threats of violence, intimidate and compel the employés of the said Bunker Hill and Sullivan Mining and Concentrating Company, then and there working in and upon the mines of the said company and within and around the mill, property, and other buildings, all the property of said company, to cease and abandon work in and upon the mines and within and around the mill, property, and other buildings of said company, said mines, mill, and other buildings of said company being then and there the same mines, mill, property, and buildings mentioned and described in said writ of injunction, and said employés being then and there in the employ of said company, and did then and there unlawfully, corruptly, fraudulently, wilfully and feloniously compel

and force the said employés, by the intimidation and violence and threats of violence aforesaid, to abandon and leave and cease their said employment under said company and their work in and upon the mines, mill, and other buildings of the said mining company last mentioned." And the defendants did by intimidation and violence and threats of force and violence intimidate and compel the officers and agents of said Bunker Hill Company against their will and consent to discharge and dismiss from the service and employment of the company all its employés, other than such persons as were members of what was called the Miners' Union, who were then working in and upon the property of the company.

" And so the grand jurors aforesaid, upon their oaths aforesaid, do charge and say that the said " defendants (naming them) " at the said Shoshone County, within the said Northern Division of the District of Idaho, did, on the 11th day of July, 1892, unlawfully, wilfully, fraudulently, and feloniously conspire, combine, confederate, and agree together to commit an offence against the United States, to wit, to corruptly and by force and threats obstruct and impede the due administration of justice in the aforesaid United States Circuit Court for the Ninth Judicial Circuit, District of Idaho, and did, thereafter, on the 12th day of July, 1892, in pursuance of said unlawful and malicious combination and conspiracy, unlawfully, wilfully, and feloniously, in the manner and form aforesaid, corruptly and by force and threats of violence obstruct and impede the due administration of justice in the aforesaid United States Circuit Court. All of which is contrary to the form, force, and effect of the United States statutes in such cases made and provided and against the peace and dignity of the United States."

Motions to quash and demurrers were filed and overruled, and, after verdict, motions in arrest were made and denied. Plaintiffs in error were convicted and sentenced to imprisonment in the Detroit house of correction, George A. Pettibone for two years, John Murphy for fifteen months, and M. L. Devine and C. Sinclair for eighteen months each.

This writ of error was thereupon allowed.

*Mr. Walter H. Smith* and *Mr. Patrick Reddy* for plaintiffs in error.

*Mr. Attorney General* and *Mr. Charles W. Russell* for defendants in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Under section 5399, any person who corruptly endeavors to influence, intimidate or impede any witness or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, is punishable by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both; and under section 5440, if two or more persons conspire to commit an offence against or defraud the United States, and one or more of them do any act to effect the object of the conspiracy, all the parties are liable to a fine of not more than ten thousand dollars or to imprisonment for not more than two years, or to both. The confederacy to commit the offence is the gist of the criminality under this section, although to complete it some act to effect the object of the conspiracy is needed. *United States* v. *Hirsch*, 100 U. S. 33.

This is a conviction for conspiracy, corruptly and by threats and force to obstruct the due administration of justice in the Circuit Court of the United States for the District of Idaho, and the combination of minds for the unlawful purpose and the overt act in effectuation of that purpose must appear charged in the indictment.

The general rule in reference to an indictment is that all the material facts and circumstances embraced in the definition of the offence must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made directly and not inferentially or by way of recital. *United States* v. *Hess*, 124 U. S. 483, 486. And in *United States* v. *Britton*, 108 U. S. 199, it was held, in an indictment for conspiracy

under section 5440 of the Revised Statutes, that the conspiracy must be sufficiently charged, and cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy.

The courts of the United States have no jurisdiction over offences not made punishable by the Constitution, laws or treaties of the United States, but they resort to the common law for the definition of terms by which offences are designated.

A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means, and the rule is accepted, as laid down by Chief Justice Shaw in *Commonwealth* v. *Hunt,* 4 Met. 111, that when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment; while if the criminality of the offence consists in the agreement to accomplish a purpose not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out.

This indictment does not in terms aver that it was the purpose of the conspiracy to violate the injunction referred to, or to impede or obstruct the due administration of justice in the Circuit Court; but it states, as a legal conclusion from the previous allegations, that the defendants conspired so to obstruct and impede. It had previously averred that the defendants conspired by intimidation to compel the officers of the mining company to discharge their employés and the employés to leave the service of the company, a conspiracy which was not an offence against the United States, though it was against the State. Rev. Stats. Idaho, § 6541. The injunction was also set out, and it was alleged that the defendants did intimidate and compel the employés to abandon work; but the indictment nowhere made the direct charge that the purpose of the conspiracy was to violate the injunction, or to interfere with proceedings in the Circuit Court.

The combination to commit an offence against the United States was averred to consist in a conspiracy against the State, and the completed act to have been in pursuance of such conspiracy; but the pleader carefully avoided the direct averment that the purpose of the confederation was the interruption of the course of justice in the United States court.

Nor did the indictment charge that the defendants were ever served with process or otherwise brought into court, or that they were ever in any manner notified of the issue of the writ or of the pendency of any proceedings in the Circuit Court.

That this omission was advisedly made is apparent from the statement in the bill of exceptions that there was no evidence given on the trial showing or tending to show that the writ of injunction mentioned and set forth in the indictment was served upon the defendants or either of them, or that they or either of them had any notice or knowledge of the issue thereof.

It was said in *United States* v. *Carll*, 105 U. S. 611, 612, by Mr. Justice Gray, delivering the opinion of the court: "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." That was the case of an indictment for passing a forged obligation of the United States, and it was held that by omitting the allegation that the defendant knew the instrument which he uttered to be forged, it had failed to charge him with any crime.

The construction that applies to the first branch of section 5399 must be applied to the second, and if it were essential that the person accused should know that the witness or officer

was a witness or officer in order to conviction of the charge of influencing, intimidating, or impeding such witness or officer in the discharge of his duty, so it must be necessary for the accused to have knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing, or impeding, or endeavoring to obstruct or impede the same.

In *United States* v. *Bittinger,* 15 Am. L. Reg. (N. S.) 49, it was held that a person is a witness under section 5399 of the Revised Statutes who is designated as such, either by the issue of a subpœna or by the endorsement of his name on the complaint, but that before any one could be said to have endeavored to corruptly influence a witness under that section, he must have known that the witness had been properly designated as such.    *United States* v. *Kee,* 39 Fed. Rep. 603.

In *United States* v. *Keen,* 5 Mason, 453, it was ruled by Mr. Justice Story and Judge Davis, that it was no defence to an indictment for forcibly obstructing or impeding an officer of the customs in the discharge of his duty that the object of the party was personal chastisement, and not to obstruct or impede the officer in the discharge of his duty, if he knew the officer to be so engaged.

In cases of that sort it is the official character that creates the offence and the *scienter* is necessary.    *King* v. *Osmer,* 5 East, 304; *King* v. *Everett,* 8 B. & C. 114; *State* v. *Carpenter,* 54 Vermont, 551; *State* v. *Burt,* 25 Vermont, 373; *State* v. *Maloney,* 12 R. I. 251; *State* v. *Downer,* 8 Vermont, 424, 429; *Commonwealth* v. *Israel,* 4 Leigh, 675; *Yates* v. *People,* 32 N. Y. 509; *Commonwealth* v. *Kirby,* 2 Cush. 577; *State* v. *Hilton,* 26 Missouri, 199; *State* v. *Smith,* 11 Oregon, 205; *Horan* v. *State,* 7 Tex. App. 183; *Duncan* v. *State,* 7 Humph. 148; *State* v. *Hailey,* 2 Strobh. (Law), 73; *State* v. *Beasom,* 40 N. H. 367.

This is so whenever knowledge is an essential ingredient of the offence, and not implied in the statement of the act itself. Whart. Cr. Pl. & Pr. § 164.

Under section 5398, every person who knowingly and wil-

fully obstructs, resists or opposes any officer of the United States in serving or attempting to serve or execute any mesne process or warrant, or any rule of or order of any court of the United States, may be imprisoned and fined. It was held in *United States* v. *Tinklepaugh*, 3 Blatchford, 425, that an indictment under this section must distinctly state and charge that a legal process, warrant, etc., was issued by a court of the United States, and was in the hands of some officer of the United States for service who had authority to serve the same, and that after such process was in the hands of the officer for service some one knowingly and wilfully obstructed, resisted or opposed him in serving or attempting to execute the same. And in *United States* v. *Stowell*, 2 Curtis, 153, it was decided that an averment that the warrant resisted was issued by a commissioner was not good, but the facts constituting the due issue must be recited, and the absence of an averment that the commissioner who issued the warrant was thereto authorized, could not be aided by referring to the court records. *United States* v. *Wilcox*, 4 Blatchford, 391.

It seems clear that an indictment against a person for corruptly or by threats or force endeavoring to influence, intimidate or impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, or set out facts that show knowledge or notice, on the part of the accused that the witness or officer was such. And the reason is no less strong for holding that a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court. Section 5399 is a reproduction of section 2 of the act of Congress of March 2, 1831, c. 99, 4 Stat. 487, "declaratory of the law concerning contempts of court," though proceeding by indictment is not exclusive if the offence of obstructing justice be committed under such circumstances as to bring it within the power of the court under section 725. *Savin, Petitioner*, 131 U. S. 267. In matters of contempt, persons are not held liable for the breach of a restraining order or injunction, unless they know or have notice, or are chargeable with

knowledge or notice, that the writ has been issued, or the order entered, or at least that application is to be made; but without service of process or knowledge or notice or information of the pendency of proceedings, a violation cannot be made out. 2 Dan. Chan. Pr. (4th Amer. ed.) 1684; 2 High on Injunctions, (3ᵈ ed.) §§ 1421, 1452; *Winslow* v. *Nayson*, 113 Mass. 411.

Undoubtedly it is a condition of penal laws that ignorance of them constitutes no defence to an indictment for their violation, but that rule has no application here. The obstruction of the due administration of justice in any court of the United States, corruptly or by threats or force, is indeed made criminal, but such obstruction can only arise when justice is being administered. Unless that fact exists, the statutory offence cannot be committed; and while, with knowledge or notice of that fact, the intent to offend accompanies obstructive action, without such knowledge or notice the evil intent is lacking. It is enough if the thing is done which the statute forbids, provided the situation invokes the protection of the law, and the accused is chargeable with knowledge or notice of the situation; but not otherwise.

It is insisted, however, that the evil intent is to be found, not in the intent to violate the United States statute, but in the intent to commit an unlawful act, in the doing of which justice was in fact obstructed, and that, therefore, the intent to proceed in the obstruction of justice must be supplied by a fiction of law. But the specific intent to violate the statute must exist to justify a conviction, and this being so, the doctrine that there may be a transfer of intent in regard to crimes flowing from general malevolence has no applicability. 1 Bish. Cr. Law, § 335. It is true that if the act in question is a natural and probable consequence of an intended wrongful act, then the unintended wrong may derive its character from the wrong that was intended; but if the unintended wrong was not a natural and probable consequence of the intended wrongful act, then this artificial character cannot be ascribed to it as a basis of guilty intent. The element is wanting through which such quality might be imparted.

*In re Coy*, 127 U. S. 731, illustrates this distinction. There the acts of Congress and the statutes of Indiana made it a criminal offence for an inspector of elections or other election officer to whom was committed the safekeeping and delivery to the board of canvassers of the poll books, tally sheets and certificates of the votes, to fail to perform this duty of safe-keeping and delivery; and it was held that in an indictment in a United States court for a conspiracy to induce those officers to omit such duty, in order that the documents mentioned might come to the hands of improper persons, who tampered with and falsified the returns at an election which included a member of Congress, it was not necessary to allege or prove that it was the intention of the conspirators to affect the election of the member of Congress who was voted for at that place, the returns of which were in the same poll books, tally sheets and certificates with those for State officers, and that the danger which might arise from the exposure of the papers to the chance of falsification or other tampering was not removed because the purpose of the conspirators was to violate the returns as to state officers and not the returns as to the member of congress.

The general evil intent in tampering with the poll lists, tally sheets and certificates was included in the charge, and it was held that it was not necessary to show that that intent was specifically aimed at the returns of the vote for congressman. This was supported by the analogy of the example that where a man is charged with a homicide committed by maliciously shooting into a crowd for the purpose of killing some person against whom he bore malice and with no intent to injure or kill the individual who was actually struck by the shot, he cannot be held excused because he did not intend to kill that particular person and had no malice against him. There the result naturally followed from the act done, and it must be presumed to have been in the contemplation of the party. And so, as the persons accused in Coy's case desired and intended to interfere with the election returns, and purposed to falsify them, the felonious intent which exposed and subjected the evidences concerning the votes for congressman

to the opportunity for their falsification or to the danger of such changes or forgeries as might affect that election, dispensed with the necessity of an averment or proof that there was a specific intent or design to influence the congressional election.

Nor is this all. The unlawful act which the defendants are charged with conspiring to commit was not an offence against the United States, so that, if the defendants were held guilty of a conspiracy to violate the injunction or interfere with proceedings about which they knew nothing, such conviction would have to rest upon a conspiracy to commit an act unlawful in another jurisdiction, and in itself a separate and distinct offence therein.

While offences exclusively against the States are exclusively cognizable in the state courts, and offences exclusively against the United States are exclusively cognizable in the Federal courts, it is also settled that the same act or series of acts may constitute an offence equally against the United States and the State, subjecting the guilty party to punishment under the laws of each government. *Cross* v. *North Carolina*, 132 U. S. 131, 139. But here we have two offences, in the character of which there is no identity; and to convict defendants of a conspiracy to obstruct and impede the due administration of justice in a United States court, because they were guilty of a conspiracy to commit an act unlawful as against the State, the evil intent presumed to exist in the latter case must be imputed to them, although ignorance in fact of the pendency of the proceedings would have otherwise constituted a defence, and the intent related to a crime against the State.

The power of the United States court was not invoked to prohibit or to punish the perpetration of a crime against the State. The injunction rested on the jurisdiction to restrain the infliction of injury upon the complainant. The criminal character of the interference may have contributed to strengthen the grounds of the application, but could not and did not form its basis.

The defendants could neither be indicted nor convicted of a

crime against the State, in the Circuit Court, but their offence against the United States consisted entirely in the violation of the statute of the United States by corruptly, or by threats or force, impeding or obstructing the due administration of justice. If they were not guilty of that, they could not be convicted. And neither the indictment nor the case can be helped out by reference to the alleged crime against the State, and the defendants be punished for the latter under the guise of a proceeding to punish them for an offence which they did not commit.

> *The judgment is reversed, and the cause remanded, with in-structions to quash the indictment and discharge the defendants.*

Mr. Justice Brewer, (with whom concurred Mr. Justice Brown,) dissenting.

I dissent from the opinion and judgment in this case. The burden of the decision is, as I understand it, that the indictment is fatally defective, because it does not allege that the defendants knew of the injunction; and, also, that the conspiracy was to obstruct the administration of justice in the Federal court. In other words, the defendants cannot be convicted of obstructing the administration of justice in the Federal court, because they did not know that justice was being there administered, and that as they did not combine with the intent of obstructing the administration of justice, no such intent can in law be imputed to them. I insist that the true rule is, that where parties combine in an unlawful undertaking — and by that I mean an undertaking unlawful in and of itself, and not one simply forbidden by statute, one which is *malum in se*, as, distinguished from *malum prohibitum* — they are amenable to the bar of criminal justice for every violation of law they, in fact, commit, whether such violation is intended or not.

Take the familiar illustration: Parties combine to break into a house and commit burglary; while engaged in the commission of that offence, resistance being made, one of the party kills the owner of the house, can there be a doubt that

they are all guilty of murder, although murder was not the purpose of the combination, and was not in the thought of any but the single wrongdoer? In other words, they who did not intend murder, who did not know that murder was, in fact, being committed, are ruled to be chargeable with the intent to commit murder, and to be guilty of that offence, because they were engaged at the time in an unlawful undertaking, and the murder was committed in carrying that undertaking into execution. In 1 Hale, P. C. 441, it is said, quoting from Dalton, 241: "If divers persons come in one company to do any unlawful thing, as to kill, rob or beat a man, or to commit a riot, or to do any other trespass, and one of them, in doing thereof, kills a man, this shall be adjudged murder in them all that are present of that party abetting him and consenting to the act, or ready to aid him, although they did but look on." Also in 1 East P. C. 257: "Where divers persons resolve generally to resist all opposers in the commission of any breach of the peace, and to execute it with violence, or in such a manner as naturally tends to raise tumults and affrays; as by committing a violent dissezin with great numbers, or going to beat a man, or rob a park, or standing in opposition to the sheriff's posse, . . . they must, at their peril, abide the event of their actions." In *Weston* v. *Commonwealth*, 111 Penn. St. 251, it was held that if several persons are with firearms holding a forcible possession of lands claimed by others, all are guilty of a murder committed by any one of them therein. In *Williams* v. *The State*, 81 Alabama, 1, it appeared that several persons conspired to invade a man's household, and went to it with deadly arms to attack and beat him, and in carrying out this purpose one of the party got into a difficulty with the owner and killed him, and the others were held guilty of murder, although they did not mean it. So, in *State* v. *McCahill*, 72 Iowa, 111, a case in some respects like this, it appeared that certain persons combined to drive employés from the premises, and in carrying out this conspiracy committed a murder, and it was held that the rest, who did not intend it, were guilty. In that case, on page 117, the court thus stated the law: "But

where there is a conspiracy to accomplish an unlawful purpose, [as the forcible driving out of the new miners was,] and the means are not specifically agreed upon or understood, each conspirator becomes responsible for the means used by any co-conspirator in the accomplishment of the purpose in which they are all at the time engaged." See, also, *Hamilton* v. *The People,* 113 Illinois, 34; *Stephens* v. *The State,* 42 Ohio St. 150; *State* v. *Allen,* 47 Connecticut, 1.

Applying these authorities to this case, if, while these defendants were thus forcibly driving the employés of the mining companies away from their work, one of them had shot and killed a resisting employé, would not all be guilty of murder, although only the single party had a thought of murder in his heart? Of course, I do not mean to claim that if a number are engaged in a single unlawful undertaking, and one of them steps aside and commits an entirely independent crime, all are responsible for that; but I do insist, that if all are engaged in an unlawful undertaking, and while so engaged and in carrying out that undertaking one commits an additional offence, not within the actual thought and intent of his co-conspirators, all are guilty of that additional offence. And, in like manner, where parties conspire and combine to do an unlawful act, and in carrying that unlawful purpose into execution they do in fact violate a statute of whose terms they may be ignorant, and, therefore, one which they did not intend to violate, they are in law guilty of its violation, and may be punished accordingly. The law under those circumstances imputes to the wrongdoer the intent to violate every law which he does in fact violate. So, as these parties are guilty of this most unlawful act, this gross breach of the peace, this act which in and of itself was a flagrant wrong against the rights of individuals, both employers and employés, they should be chargeable with the intent to commit every violation of law, which they did in fact commit. And when parties stop injunctive process, they impede the administration of justice.

But it is said that this breach of the peace was a disturbance of only the peace of the State of Idaho, and that this unlawful

aggression was simply a violation of the statutes of that State, and involved in and of itself no infraction of Federal law; that before a conviction can be sustained it must be alleged and proved that there was an intent to violate the Federal law; and that an intent of wrong against one sovereignty cannot be imputed to one who commits a wrong against another sovereignty. The converse of that has already been settled by this court in the case of *In re Coy*, 127 U. S. 731. That was an indictment for a conspiracy, and the conspiracy charged was to induce, aid, counsel, procure and advise certain election officers of the State of Indiana to unlawfully neglect and omit to perform the duties of the election laws of that State. The indictment, it is true, described the election as one at which a congressman was to be elected, but did not charge any intent or conspiracy to do anything affecting the election of such congressman, and the point, and the main point presented, was that the indictment contained no averment of an intent and purpose of the defendants to affect in any manner the election of a member of congress, or to influence the returns relating to that office; but this court held that the objection was not well taken. Mr. Justice Field alone dissented from the opinion in that case, holding that, as it is insisted here, there should be a specific charge of a conspiracy to do something affecting the election of the Federal officer. I quote this from his opinion: "The indictment in this case charges a conspiracy to induce certain election officers appointed under the laws of Indiana to commit a crime against the United States, the crime being the alleged omission by them to perform certain duties imposed by the laws of that State respecting elections. But it contains no allegation that the alleged conspiracy was to affect the election of a member of congress, which, as said above, appears to me to be essential to bring the offence within the jurisdiction of the court. If the conspiracy was to affect the election of a state officer, no offence was committed cognizable in the District Court of the United States. If it had any other object than to affect the election of a member of Congress, it was a matter exclusively for the cognizance of the state courts." It seems to

me that in this opinion the court endorses the views expressed by Mr. Justice Field in that dissent, and then repudiated by a majority of the court.

I am authorized to say that MR. JUSTICE BROWN agrees with me in this dissent.