UNITED STATES of America,
Appellee,

v.

John Joseph LOMBARDOZZI, Daniel Joseph Marino, Michael Joseph Zampello, Camillo Charles Lombardozzi and George Lombardozzi, Defendants-Appellants,

No. 505, Docket 28783.

United States Court of Appeals
Second Circuit.

Argued June 9, 1964.

Decided Aug. 4, 1964.

Certiorari Denied Nov. 16, 1964.

See 85 S.Ct. 261.

Raymond Bernhard Grunewald, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for Eastern Dist. of New York, Brooklyn, N. Y., of counsel), for the United States.

William Sonenshine, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, Gustave H. Newman, Brooklyn, N. Y., of counsel), for defendants-appellants.

Before MOORE, SMITH and MARSHALL, Circuit Judges.

MOORE, Circuit Judge.

The five appellants appeal from a judgment of conviction entered upon a jury

verdict. The one count indictment charged them with assault upon an agent of the Federal Bureau of Investigation in violation of 18 U.S.C.A. § 111. This statute states:

"§ 111. Assaulting, resisting, or impeding certain officers or employees.

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

Section 1114 includes "any officer or employee of the Federal Bureau of Investigation of the Department of Justice."

Appellants assert as their principal points (1) that proof of knowledge of the official capacity of the person assaulted is an essential element of the crime charged and that the trial court erred in refusing to submit the issue of knowledge to the jury; and (2) that there was no evidence that the agent was "engaged in * * * the performance of his official duties."

The necessity of establishing knowledge as a matter of law was met directly by the trial court in his charge wherein he stated:

"The Government is not required to prove that the defendants or any of them had knowledge that Foley was so employed and engaged * * *."

Appellants rely primarily on a statement in Pettibone v. United States, 148 U.S. 197, 205, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1892), wherein Mr. Chief Justice Fuller said, "[I]t is the official character that creates the offense, and the scienter is necessary." In United States v. Taylor, 57 F. 391, 392, 393 (C.C.E.D.Va. 1893), a district judge dismissed indictments which failed to allege "knowing that they were officers of the United States, engaged in performing duties imposed by laws of the United States" and said in a case involving an assault upon a federal officer, "In such cases the scienter is an essential ingredient of the offense." In Hargett v. United States, 183 F.2d 859 (5 Cir. 1950), the Fifth Circuit took cognizance of Pettibone and, Taylor and also reviewed cases in the Fifth, Sixth, Seventh and Eighth Circuits,* all holding on the facts therein that scienter was a necessary ingredient of crimes against federal officers. However, in Bennett v. United States, 285 F.2d 567 (5 Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961), the Fifth Circuit directly answered the argument that "knowledge of the official character of the person assaulted is necessary to constitute the crime of which he was charged," by saying that it was not persuaded "that the indictment was insufficient because it failed to include the element of scienter." The reason advanced for this conclusion was that:

"The statute making criminal such acts as those of which he was convicted does not require that the doer of the act have knowledge that the person who is assaulted, resisted, opposed, impeded, intimidated, or interfered with is a federal officer. It merely requires that the act condemned be done in order to establish a violation of the statute, and the provisions of the section apply to 'whoever' does the act, whether he does it with knowledge of the character of the person whom he acts against and whatever his intent in so acting."

The court also relied upon the opinion in McNabb v. United States, 123 F.2d 848, 855 (6th Cir.), rev'd on other grounds, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942), certiorari denied after

---

* Odom v. United States, 116 F.2d 996 (5th Cir.), rev'd 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941); Sparks v. United States. 90 F.2d 61 (6th Cir. 1937); Chiaravalloti v. United States, 60 F.2d 192 (7th Cir. 1932); Walker v. United States, 93 F.2d 792 (8th Cir. 1938).

retrial, 323 U.S. 771, 65 S.Ct. 114, 89 L.Ed. 616 (1944), in part, as follows:

> "In the language of the statute quoted in excerpt, no exemption is expressly made of a killer who does not know that he is killing a federal officer of a class covered by the statute. Exemption may not be implied. The words and the intent of the statute are clear beyond the necessity for any canonical construction. The statute says, 'whoever shall kill,' not 'whoever shall kill with knowledge that he is killing' a federal officer of an enumerated class, shall be punished."

■■ Many statutes creating crimes contain such requirements as "knowingly," "with knowledge," "intentionally" and "with intent." No such prerequisite has been written by Congress into section 111 although it could easily have made knowledge an essential ingredient. The meager legislative history suggests that in section 111 Congress merely sought to provide a federal forum for the trial of cases involving various offenses against federal officers in the performance of official duties. See Ladner v. United States, 358 U.S. 169, 174–177, 79 S.Ct. 209, 212, 213, 3 L.Ed.2d 199 (1958). The courts should not by judicial legislation change the statute by adding, in effect, the words "with knowledge that such person is a federal officer." The reasoning in McNabb and Bennett is far more persuasive as to the proper construction to be placed upon section 111 than those cases which write the element of scienter into a statute which does not contain this requirement.

■ Appellants attack the sufficiency of the evidence that agent Foley was assaulted while engaged in the performance of his official duties. The record clearly establishes the agent's assignment by his superiors to be present at the funeral of Carmello Lombardozzi and to conduct a photographic and visual surveillance of such events as might there occur and of such persons present as might be the subjects of federal investigation. While so engaged, the agent was assaulted by appellants in front of the Church of the Immaculate Heart of Mary in Brooklyn, New York. The trial court in his charge fairly presented the factual question of whether the agent was engaged in official duty. The jury's verdict was determinative.

■ During cross-examination appellants sought to elicit the place of employment of an important Government witness. The trial court allowed extensive cross-examination but sustained an objection to a question seeking to ascertain whether the night club in which the witness was working as a bouncer was in New York City. Even on appeal appellants have not demonstrated the materiality or relevance of this information. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), supports the discretion of the trial court in deciding how far afield cross-examination should go. See United States v. Rich, 262 F.2d 415 (2 Cir. 1959).

■ Agent Foley's gun was received in evidence as the instrument used to inflict the serious skull fracture suffered by him. The gun was not unrelated to the crime and was not introduced solely to create prejudice but rather to show how such an injury could have been caused. Medical testimony was offered to establish the nature of the object required to inflict so severe a fracture, namely, an object such as a gun. The gun, therefore, had probative value and was properly admitted.

■ Appellants contend that the trial court should have declared a mistrial because some of the jurors had read newspaper articles which appellants claim were inflammatory and untrue. When the court was informed of the publication in the press of certain articles relating to the trial, he inquired as to whether any of the jury had seen or read the articles. Upon being advised that three of the jurors had seen such articles, the court proceeded to interrogate them as to possible prejudice or influence resulting therefrom. Satisfied

that they would not be adversely affected by the articles, the court in the exercise of discretion denied the motion for a mistrial. The cautionary instructions to the jury at the time and in the charge were adequate. The problem frequently presented in large metropolitan centers in connection with long trials which attract public attention has been thoroughly covered in the opinion in United States v. Agueci, 310 F.2d 817, 831 (2 Cir. 1962), cert. denied sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963). No reversible error resulted from the court's refusal to declare a mistrial.

■ During the trial a photograph was shown to the witness Ferraioli to refresh his recollection. The trial court who characterized Ferraioli as an "unwilling witness" has broad discretion in passing upon appropriate trial procedures. He is in the best position to sense and evaluate the courtroom atmosphere and witness reluctance or hostility. The use of photographs and statements in connection with the examination of the witnesses Ferraioli and Ramsey under all the surrounding circumstances was proper.

■ The incident which appellants characterize as "improper and inflammatory remarks during his [the prosecutor's] summation" consisted of a question, "And where is Carmine Lombardozzi? Could the Government have brought forward Carmine—" At this point an objection was made and the Court said: "The defendants are not required to bring in any witnesses." Colloquy then ensued at the bench out of the presence of the jury. In such colloquy, defense counsel represented the rhetorical question to have been "Why didn't they call Carmine Lombardozzi?" The record does not substantiate this representation. The subject of the discussion was concluded by the Court instructing the jury that "the Government has a right to call any witnesses [sic] it pleases, and the defendants have a right to call any witnesses [sic] they please. But the defend-

ants are not required to call any witnesses; that is their prerogative. They don't have to prove their innocence in the case." This was an accurate statement of the law. Since the prosecutor's abortive comment as to Carmine Lombardozzi was cut short by objection and never finished, it cannot by the most speculative inference be twisted into an accusation that appellants were derelict in not producing and calling him.

Judgment affirmed.