UNITED STATES of America,
Appellee,

v.

Louis Irving PERKINS, Defendant-
Appellant.

No. 73–1064.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1973.

Decided Dec. 14, 1973.

Conrad W. Fisher, Worcester, Mass., by appointment of the Court, with whom Fisher, Helfenbein & Russell, Worcester, Mass., was on brief, for appellant.

William A. Brown, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

After a trial by jury, appellant was convicted of wilfully and forcibly assaulting two federal officers by means of a dangerous weapon, a rifle, in violation of 18 U.S.C. § 111 (1970).[1] Although he urges numerous grounds for reversal, appellant primarily contends that the jury should have been instructed that the government must establish beyond a reasonable doubt that at the time of the assault he knew the agents were federal officers, and that failure to so instruct constituted reversible error. We affirm.                         :

On the basis of the evidence presented at trial, the jury could reasonably find the following facts. In the early evening of January 5, 1972, Special Agents Drinan and Mullen, assigned to the Federal Bureau of Narcotics and Dangerous Drugs, went to 63 Highland Street, in Worcester, Massachusetts, for the purpose of seeing one Willie Trinidad, a reputed dealer in heroin. At the time they were operating as undercover agents and were dressed accordingly. Trinidad had apparently sold heroin to the agents some time earlier, and the purpose of the January 5 meeting was to arrange for a second purchase. The agents testified that when they reached the premises Trinidad would not let them in, though he did speak to them from behind a locked front door. Drinan and Mullen sought to persuade him to make another sale, but their efforts were repulsed. While Trinidad and the agents were thus engaged, appellant's girl friend went upstairs to tell him what was going on. Appellant, a resident of the premises, also served as the building's custodian and part of his function was to keep the place free from "undesirables." After speaking with his girl friend, appellant immediately went downstairs, out the back entrance, and around to the front of the building to confront the agents. In the process, he picked up a four foot wooden club and began to brandish it at them.

Appellant, at the time, had absolutely no idea that these two men were federal officers, and, under the circumstances, he could not reasonably have been expected to know that they were. The agents had never encountered appellant before, and until their confrontation he had never been the object of their attention.

As appellant approached Drinan and Mullen with the club, they were preparing to leave the premises, having apparently concluded that further attempts to persuade Trinidad would be futile. Appellant ordered them to depart, and they responded that they were in the process of doing so. As they left, appellant, still brandishing the club, pursued them for approximately thirty feet and' then told Drinan to get up against the wall. He then called out for someone to get the police. At approximately this time, a group of people emerged from 63 Highland Street, one of whom was carrying a rifle with telescopic sights. Upon seeing this, the agents drew their revolvers and fled. As they did, appellant, who had not yet seen the rifle, dropped his club and retreated. Although the facts are hereafter somewhat hazy, it appears that appellant somehow acquired the rifle, pursued the agents and fired three or four shots at them. The agents were not injured. At this point, other federal agents surveilling the

---

1. 18 U.S.C. § 111 (1970) provides:

"*Assaulting, resisting, or impeding certain officers or employees*

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Appellant was acquitted on another count alleging assault by means of a wooden club.

premises closed in and arrested appellant.

■ At trial, the court instructed the jury that appellant's lack of knowledge regarding the agents' status as federal officers was immaterial to conviction under § 111. In light of its other instructions this was correct, but because of the substantial number of prosecutions under this statute, and disagreement in the cases, real or apparent, we believe some elaboration is in order.

■ Although several early cases had held that such knowledge was a vital element to conviction under this statute,[2] it is now the settled rule in virtually every circuit that, as a general proposition, scienter need not be proven.[3] As this court has recently stated, the legislative purpose behind § 111 is "to provide federal officers the protection of the federal courts when they are performing their duties. Burdening the government with an obligation to prove knowledge could seriously impede this purpose." United States v. Langone, 445 F.2d 636, 637 (1st Cir.), cert. denied, 404 U.S. 915, 92 S.Ct. 226, 30 L.Ed.2d 189 (1971), see also United States v. Maynard, 452 F.2d 1087, 1088 (1st Cir. 1971) (per curiam). Moreover, although most criminal statutes enacted by Congress specifically and unmistakably provide for a requirement of scienter, § 111 "contains no words which would indicate

that a person who commits one of the proscribed acts must do so with knowledge that his victim is a federal officer . . .." United States v. Goodwin, 440 F.2d 1152, 1155 (3d Cir. 1971). Had Congress intended otherwise, "it could easily have made knowledge an essential ingredient." United States v. Lombardozzi, 335 F.2d 414, 416 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964).

Nonetheless, we are mindful that § 111 is not one of those statutes which have completely eliminated the requirement of mens rea. United States v. Goodwin, 440 F.2d 1152, 1156 (3d Cir. 1971); United States v. Ganter, 436 F. 2d 364, 367 (7th Cir. 1970); United States v. Wallace, 368 F.2d 537, 538 (4th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136 (1967); see Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). But, even without knowledge of the identity of the officer, mens rea would obviously be present in conduct which is unlawful of itself, i. e., an intentional assault.[4]

■ There are, however, situations in which the defendant's lack of knowledge of the agent's status would be relevant. No court that we are aware of has held that a defendant who in good faith, because of ignorance of the officer's identity, believes that he is acting

---

2. See Hall v. United States, 235 F.2d 248 (5th Cir. 1956); Hargett v. United States, 183 F.2d 859 (5th Cir. 1950); Walker v. United States, 93 F.2d 792 (8th Cir. 1938); Sparks v. United States, 90 F.2d 61 (6th Cir. 1937); United States v. Bell, 219 F. Supp. 260 (S.D.N.Y.1963); United States v. Miller, 17 F.R.D. 486 (D.Vt.1955); cf. Pettibone v. United States, 148 U.S. 197, 13 S. Ct. 542, 37 L.Ed. 419 (1893).

3. See United States v. Maynard, 452 F.2d 1087 (1st Cir. 1971) (per curiam); United States v. Langone, 445 F.2d 636 (1st Cir.), cert. denied, 404 U.S. 915, 92 S.Ct. 226, 30 L.Ed.2d 189 (1971); United States v. Lombardozzi, 335 F.2d 414 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); United States v. Goodwin, 440 F.2d 1152 (3d Cir. 1971); United States v. Wallace, 368 F.2d 537 (4th Cir. 1966), cert.

denied, 386 U.S. 976, 87 S.Ct. 1169, 18 L. Ed.2d 136 (1967); Pipes v. United States, 399 F.2d 471 (5th Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969); United States v. Ganter, 436 F.2d 364 (7th Cir. 1970); United States v. Leach, 429 F.2d 956 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); United States v. Kartman, 417 F.2d 893 (9th Cir. 1969); cf. McNabb v. United States, 123 F.2d 848 (6th Cir. 1941), rev'd on other grounds, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), rehearing denied, 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727 (1943).

4. United States v. Langone, supra; accord, United States v. Maynard, supra; United States v. Lombardozzi, supra; United States v. Goodwin, supra; United States v. Wallace, supra; United States v. Ganter, supra.

in lawful defense of his person or property and uses no more than reasonable force in effectuating that purpose, can be convicted simply by proof that in fact he was impeding an officer in the performance of his duties.[5] In such a situation the defendant would lack mens rea unless he knew that his actions would impede a federal officer's performance of his duties—it is not enough for a conviction under the statute to prove simply the natural consequences of defendant's conduct, without proof of a criminal intent. In cases of non-assaultive interference with an officer, or of physical resistance sought to be justified as self-defense, if the defendant used no more than reasonable force, there would be no criminal intent in the absence of knowledge of the officer's status. Hence in these situations proof of such knowledge would be a necessary part of the government's case.[6]

■ In keeping with this principle, the district court properly and adequately charged the jury that if the defendant here was ignorant of the officers' identity he could not be convicted unless he used more force than was necessary to protect the person or property of himself or others; that is, unless the justification of self-defense was not available because of his excessive conduct. The evidence clearly warranted a finding of such excessive force. Defendant has no complaint.

■■ None of defendant's other contentions have merit. They involve either allegations concerning the admission or exclusion of evidence, as to which the trial court did not abuse its broad discretion, or allegations concerning the purported failure of the government to provide the defense with Jencks Act materials, which contention is unsupported by the record.

Affirmed.

---

5. *See, e. g.,* United States v. Langone, *supra,* 445 F.2d at 637 (dictum) ; United States v. Goodwin, *supra,* 440 F.2d at 1156 (dictum) ; United States v. Wallace, *supra,* 368 F.2d at 538 (dictum).

6. In fact, most of the early cases stating that scienter must be shown can be seen as requiring it as proof of criminal intent where the defendant has presented evidence negating mens rea. *See, e. g.,* Hall v. United States, *supra* (substantive offense was resisting arrest which might have been illegal if attempted by private person) ; Hargett v. United States, *supra,* 183 F.2d at 865 (defendants presented facts raising justification of self-defense and defense of property) ; Walker v. United States, *supra* (substantive offense was obstruction of justice by interfering with a witness, defendant alleged he was merely consulting with a codefendant and did not realize she was a witness).