896 F.2d 704
 15 Fed.R.Serv.3d 1367, RICO Bus.Disp.Guide 7432
 Thomas J. O'MALLEY, Plaintiff-Appellee,
v.
NEW YORK CITY TRANSIT AUTHORITY and Anthony A. Ardolino,
Janet Holt, Helaine Finnegan, Brian Frohlinger,
Evelyn Jonas, and Al Cosenza,
Defendants-Appellants.
 No. 256, Docket 89-7450.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 2, 1989.
Decided Feb. 20, 1990.
 
 Sharon Simon, Carle Place, N.Y. (Leeds & Morelli, of counsel), for plaintiff-appellee.
 Edward F. Zagajeski, Brooklyn, N.Y. (Albert C. Cosenza, of counsel), for defendants-appellants.
 Before VAN GRAAFEILAND, PIERCE and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 On this appeal we consider whether the district court erred by not imposing any sanction pursuant to rule 11 of the Federal Rules of Civil Procedure after it found that plaintiff's claim based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68, was baseless. In accordance with rule 11, we hold that some sanction is mandatory once a district court finds a complaint to be groundless, and we remand to the district court to tailor an appropriate sanction for this case.
 
 BACKGROUND
 
 2
 In November 1984 plaintiff Thomas J. O'Malley was hired by the defendant, New York City Transit Authority (NYCTA), as an attorney in its Workers' Compensation Bureau. O'Malley's employment was terminated in August 1986. He instituted a claim with the Workers' Compensation Board, which reinstated him to his former position in July 1988, and provided him with $76,000 in back pay.
 
 
 3
 In July 1988 O'Malley filed a RICO complaint in the United States District Court for the Eastern District of New York against the NYCTA and several named employees. He alleged three categories of predicate acts of racketeering activity: 1) mail fraud; 2) obstruction of justice; and 3) extortion. The facts underlying these alleged RICO violations arose out of (1) an employment-related injury sustained by O'Malley in January 1986, for which he filed an accident report with the NYCTA and sought Workers' Compensation Benefits; (2) the subsequent termination of his employment; and (3) the legal proceedings he later brought.
 
 
 4
 In a pre-trial conference defendants notified Magistrate Carol Amon that they would seek summary judgment and would pursue rule 11 sanctions. After reviewing O'Malley's RICO complaint, Magistrate Amon advised the plaintiff and his attorney that the cause of action lacked legal merit, suggested its withdrawal, and stayed discovery proceedings pending defendants' motion for summary judgment, which was subsequently granted. The district court, found that plaintiff's claim was nothing more than "a simple claim made by an employee that he was wrongfully terminated", that no triable issues of fact existed concerning the alleged predicate acts of mail fraud, obstruction of justice, and extortion, and that plaintiff had failed to show any pattern of racketeering activity.
 
 
 5
 Despite its comments that O'Malley's RICO claim was "baseless" and "outrageous", the district court refused to grant defendants' motion for rule 11 sanctions due to the "subtle nuances in second circuit learning with respect to racketeering activity and enterprise". NYCTA appeals from that part of the decision which denied sanctions. We now reverse.
 
 DISCUSSION
 
 6
 A. Rule 11.
 
 
 7
 In this circuit, Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), set the standard for determining when rule 11 has been violated. There, this court reviewed the stringent requirements of the rule and stated that a violation of rule 11 is triggered in either of two situations:
 
 
 8
 * * * when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.
 
 
 9
 Id. at 254 (emphasis in original).
 
 
 10
 Rule 11 imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading" before actually signing it. Id. at 253. The signature of the attorney signifies that he has made the necessary inquiry and believes the claim to be supported by the facts and warranted by law. In determining whether or not the attorney's inquiry was reasonable in light of all the circumstances, see Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir.1986), an objective standard is applied. See Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).
 
 
 11
 A court may consider a variety of factors, including whether the attorney relied on the client for factual information, whether the pleading was supported by a plausible view of the law, or even how much time was spent on research. Doubts as to the viability of a signed pleading, are to be resolved in favor of the signer. Id. However, if it is clear that the action was destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law, rule 11 requires a sanction. Norris v. Grosvenor Marketing, Ltd., 803 F.2d 1281, 1288 (2d Cir.1986); Eastway, 762 F.2d at 254.
 
 
 12
 On appeal of a rule 11 determination, different standards of review may be applied, depending upon the issue presented. See, Official Publications, Inc. v. Kable News Co., 884 F.2d 664, 669 n. 1 (2d Cir.1989). Where, as here, the challenge is whether or not the pleading is groundless, we apply a de novo standard of review. Id.; City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 49 (2d Cir.1988). We therefore must consider on this appeal whether, as a matter of law, O'Malley's RICO claim was baseless and therefore required imposition of a sanction.
 
 
 13
 B. The Complaint.
 
 
 14
 O'Malley's claim against defendants is based on the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. Secs. 1961-68, specifically Sec. 1962(c). Under that section it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A "pattern of racketeering activity" requires at least two acts involving racketeering activity. 18 U.S.C. Sec. 1961(5). O'Malley alleged that the defendants' acts of "racketeering activity" included five instances of mail fraud (18 U.S.C. Sec. 1341), four of obstruction of justice (18 U.S.C. Sec. 1503), and one of claimed interference with commerce by extortion (18 U.S.C. Sec. 1951). See 18 U.S.C. Sec. 1961(1)(B). Not one of these alleged instances, however, could even remotely constitute a federal claim.
 
 
 15
 1. Mail Fraud.
 
 
 16
 To be guilty of mail fraud under 18 U.S.C. Sec. 1341, defendants must have used the mail as a means to obtain "money or property by means of false or fraudulent pretenses, representations, or promises" or for purposes of executing a scheme to defraud. A showing of intentional fraud, Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 49 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), or "reckless indifference to the truth" is necessary to satisfy "the requisite knowledge and criminal intent" element of mail fraud. United States v. Sheiner, 273 F.Supp. 977, 983 (S.D.N.Y.1967), aff'd, 410 F.2d 337 (2d Cir.), cert. denied, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969). Acts done inadvertently, mistakenly, or in good faith without an intent to defraud do not satisfy the requirements of the statute. Sheiner, 273 F.Supp. at 982-83.
 
 
 17
 Turning to this complaint, we note initially that O'Malley fails to provide a sufficient factual basis for his conclusory allegations of intent to defraud. See Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987) (plaintiff must plead circumstances that provide at least a minimal factual basis for scienter). While he alleges that in furtherance of a scheme to defraud the defendants used the "mails as an instrumentality of interstate commerce" by sending O'Malley five false and misleading letters, the five letters he relies on as predicate acts of racketeering turn out to be no more than routine, innocuous, business communications. Most of them were standard form letters used regularly by defendants in dealing with its employees.
 
 
 18
 a. The first was a handwritten note, dated March 3, 1986, mailed from O'Malley's supervisor, Phillip Schneider. The note simply inquired whether O'Malley had undergone surgery, expressed concern that no one had heard from him, and indicated that certain medical records were not in his file.
 
 
 19
 b. O'Malley had received Workers' Compensation Benefits for the period he was absent from his employment. By letter of July 1, 1986, defendant Janet Holt, Claims Manager of the Workers' Compensation Unit, notified him of a $540.00 overpayment of benefits and requested its return. O'Malley claims that this letter constitutes not only mail fraud, but also extortion.
 
 
 20
 c. Defendant Holt's letter of July 11, 1986, informed O'Malley that his request for differential benefits had been denied. Differential benefits compensate employees of the NYCTA for the difference between the amount received under Workers' Compensation and the employee's actual salary for the period the employee is unable to work due to a service-related injury. The differential benefits were denied, according to the letter, because O'Malley had failed to make an immediate report of his January 16, 1986 injury, as required by NYCTA rules and regulations.
 
 
 21
 d. In August 1986 O'Malley fell ill while at work and did not report to work the following day. He was denied sick pay for this period by letter from the Director of Management and Budget for the NYCTA, Helaine Finnegan, dated April 23, 1987. The denial was a consequence of his "failure to comply with appropriate procedures".
 
 
 22
 e. The NYCTA terminated O'Malley's employment by letter dated August 22, 1986, effective August 25.
 
 
 23
 No competent attorney, after even a cursory reading of these five letters in conjunction with the federal statute, could assert a mail fraud claim in good conscience. As the district court correctly stated, "there's no mail fraud or anything which would even remotely resemble mail fraud [based] on these letters of the Transit Authority to O'Malley".
 
 
 24
 2. Obstruction of Justice.
 
 
 25
 O'Malley's claims of obstruction of justice are even more preposterous. It is an obstruction of the due administration of justice to intentionally influence or injure a juror or officer "in or of any court of the United States". 18 U.S.C. Sec. 1503. To constitute an offense under this statute, the act must relate to a proceeding in a federal court of the United States. Id.; see United States v. Biaggi, 853 F.2d 89, 104 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); accord Pettibone v. United States, 148 U.S. 197, 209-10, 13 S.Ct. 542, 547-48, 37 L.Ed. 419 (1893) (predecessor statute); United States v. Scoratow, 137 F.Supp. 620, 621 (W.D.Pa.1956). O'Malley alleges four acts of obstruction of justice in his complaint.
 
 
 26
 a. The first obstruction of justice claim is based on alleged perjury by Janet Holt when she testified for the NYCTA at a hearing before an administrative law judge of the New York State Workers' Compensation Board regarding O'Malley's claim of wrongful termination and discrimination. The ALJ judge found in favor of O'Malley's discrimination claim under Workers' Compensation Law Sec. 120, and at a later hearing, a second ALJ ordered the NYCTA to reinstate O'Malley with back pay.
 
 
 27
 b. The second obstruction of justice claim is identical to the first, except that the allegedly perjured testimony was that of Anthony A. Ardolino, NYCTA's Director of Claims.
 
 
 28
 c. When the NYCTA appealed to the New York State Supreme Court, Appellate Division, Third Department, it submitted an affirmation by Evelyn Jonas, an associate attorney in the NYCTA General Counsel's office, in support of a stay application. In his federal complaint, O'Malley alleges that this affirmation constituted perjury and the third predicate act of obstruction of justice.
 
 
 29
 d. The fourth alleged obstruction of justice is an affidavit by defendant Brian Frohlinger, Assistant Vice President for Labor Relations at the NYCTA, submitted by the NYCTA in support of its motion to dismiss O'Malley's Article 78 proceeding, brought in December 1986 in the New York State Supreme Court to recover back pay and reinstatement of his position.
 
 
 30
 The obvious deficiency of each of these instances is that the proceeding underlying each of them occurred in state judicial or administrative courts, not in a federal court proceeding as required by Sec. 1503. Hence, from the outset O'Malley's obstruction of justice claim had no chance. In a lame attempt to bring his allegations under rule 11's "extension of existing law" provision, O'Malley now argues that since the RICO statute should be broadly construed, the concept of obstruction of justice as a predicate act should apply in state as well as federal proceedings.
 
 
 31
 Although a broad reading of RICO is necessary to effectuate its remedial purpose, see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), we cannot go so far as to abrogate the plain meaning of the statute. In defining "racketeering activity", congress not only included obstruction of justice by reference to a specific section, Sec. 1503, of Title 18 of the United States Code, which expressly is limited to federal court proceedings, Sec. 1961(1)(B); but it also failed to include obstruction of justice as one of the generic state law crimes, Sec. 1961(1)(A).
 
 
 32
 Given such clear indicia of congressional intent to limit RICO's obstruction of justice to federal court proceedings, O'Malley's argument to extend the statute to include state judicial and administrative proceedings is simply unreasonable. We cannot accept it as a good faith argument for the extension of existing law.
 
 
 33
 3. Extortion.
 
 
 34
 O'Malley's extortion claim is perhaps the most incredible of his alleged predicate acts. An act of extortion requires the interference or attempted interference with commerce by the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. Sec. 1951(b)(2). The complaint alleges that Holt's July 1, 1986, letter seeking a return of a $540 overpayment made in error constituted extortion by "fraudulently demanding return of a purported overpayment" of compensation benefits.
 
 
 35
 A plain reading of this letter in light of well established case law belies any possible extortion claim. Extortion under color of official right requires a public official to make "wrongful use of his office to obtain money not due him or his office". 18 U.S.C. Sec. 1951. United States v. O'Grady, 742 F.2d 682, 687 (2d Cir.1984) (emphasis omitted), quoting United States v. Margiotta, 688 F.2d 108, 130 (2d Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); see also United States v. Clemente, 640 F.2d 1069, 1076 (2d Cir.) ("the use of wrongful means to achieve a wrongful objective"), cert. denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981). The letter in question is a standard form used in the ordinary course of NYCTA's business; the amount of the overpayment and O'Malley's name and address were simply written in the blanks. Apparently, the NYCTA believed O'Malley had been mistakenly paid Workers' Compensation Benefits for a period in which he was able to resume his regular duties. If true, the NYCTA had a good faith claim of right to the money requested in the letter, and defendant Holt was merely carrying out her duties as administrative manager. The most that can be said for O'Malley's view is that he disagreed with the NYCTA about the overpayment.
 
 
 36
 If we were to accept plaintiff's view, every employer who sent a similar form letter to an employee in error, could be subject to a possible RICO suit based on extortion. A simple request for money claimed to be due does not, and cannot, fulfill the requirements of an act of extortion; extortion requires that the request be wrongful and unlawful, not simply mistaken. It is clear that O'Malley's allegation of extortion, a clutching at straws, lacked factual or legal merit.
 
 
 37
 In sum, O'Malley has failed to allege even one act that could qualify as racketeering activity under RICO.
 
 
 38
 C. Imposition of Rule 11 Sanctions.
 
 
 39
 Based on our de novo review of this RICO claim, we hold, as a matter of law, that rule 11 has been violated, and we endorse the district court's characterization of O'Malley's complaint as perhaps the most "baseless" RICO claim ever encountered by this court. However, we cannot accept the district court's decision to withhold a proper sanction. Once a violation is shown to exist, the district court may not ignore the command of the statute: "sanctions shall be imposed". Eastway, 762 F.2d at 254. It is true that some aspects of the law under RICO may still be somewhat unclear, as suggested by the district court. Our circuit, like most others around the country, has had great difficulty with the RICO concepts of "pattern" and "enterprise", e.g., United States v. Indelicato, 865 F.2d 1370 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 56, 107 L.Ed.2d 24 & 25 (1989); Beauford v. Helmsley, 865 F.2d 1386 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989); United States v. Ianniello, 808 F.2d 184 (2d Cir.1986), cert. denied, 483 U.S. 1006, 107 S.Ct. 3229 & 3230, 97 L.Ed.2d 736 (1987). But this alone is not a justification for refusing to impose a sanction for O'Malley's "baseless" complaint. Indeed, few courts have hesitated very long over the problem relevant to this case: what is or is not a predicate act of racketeering activity. Mere lack of clarity in the general state of some areas of RICO law cannot shield every baseless RICO claim from rule 11 sanctions, and an affirmation of the district court's view would encourage bringing all sorts of groundless RICO claims, in direct contravention of both the language and purpose of amended rule 11.
 
 
 40
 The need to impose a sanction here was enhanced by O'Malley's continuing to press his RICO claim after receiving advice to withdraw the suit from Magistrate Amon at the pre-trial conference and after being warned by defendants that they would request a rule 11 sanction if he were to pursue the RICO claim. Although it is not for this appellate court to say whether O'Malley's claim was brought for an improper purpose, continuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction. See, e.g., City of Yonkers, 844 F.2d at 49 (sanction for costs of motion appropriate where plaintiff ignored request to withdraw meritless claim, requiring defendant to move for summary judgment).
 
 
 41
 We turn, finally, to the type of sanction to be imposed. District courts are given broad discretion in tailoring appropriate and reasonable sanctions under rule 11. See Eastway, 762 F.2d at 254 n. 7. Once a "pleading, motion, or other paper" is found to be in violation of Rule 11, the district court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11 (emphasis added). An appellate court is ill-suited for the delicate, fact-intensive analysis and judgment needed to fashion a proper sanction, one that will further the purposes behind amended rule 11 but not unduly or unjustly punish an offender. That determination is best made in the first instance by the district judge, to whom we are remanding this case for that purpose.
 
 
 42
 Although we do not limit the district judge's discretionary powers in fashioning an appropriate rule 11 sanction here, we do think that the district judge should consider whether imposition of sanctions against both the attorney and his client would be proper in the present case. Even though it is the attorney who actually violates rule 11 by signing the complaint, the statute specifically authorizes a court to sanction the "represented party" as well. Fed.R.Civ.P. 11. See Oliveri, 803 F.2d at 1274. The circumstances here differ from the norm in that the party who instigated the action is also a practicing attorney. In view of O'Malley's presumed familiarity with the law, very likely he is as much at fault as his attorney in bringing this groundless RICO action.
 
 CONCLUSION
 
 43
 That portion of the judgment appealed from that denied defendants' motion for sanctions pursuant to rule 11 is reversed. In accordance with this opinion, the matter is remanded to the district judge to determine, in his sound discretion, an appropriate rule 11 sanction to be imposed.
 
 
 44
 Reversed and remanded.